**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ALBEMARLE CORPORATION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:23-cv-600 |
| OLIN CORPORATION, | : |
| Defendant. | : |

**ALBEMARLE CORPORATION'S MEMORANDUM OF LAW
IN OPPOSITION TO OLIN CORPORATION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD............................................................................................................2

III. ARGUMENT.........................................................................................................................2

    A. Albemarle has directly alleged Olin's monopoly power in the relevant market, including through the public statements of Olin's own CEO......................3

    B. Albemarle, as a customer-plaintiff, has alleged antitrust injury in the form of paying higher-than-competitive prices resulting from Olin's monopolistic conduct ...................................................................................5

    C. Albemarle has alleged predatory and exclusionary conduct by Olin in the form of long-term exclusive supply contracts, coupled with coercive attempts to shift the pricing terms of those contracts in Olin's favor ................................................................................................................8

IV. CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ...............................................................................5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................................2

*Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869 (3d Cir. 1995) .......................................................6 n.1

*Continental Airlines, Inc. v. United Air Lines, Inc.*,
    120 F. Supp. 2d 556 (E.D. Va. 2000) ......................................................................................6 n.1

*CSR Ltd. v. Fed. Ins. Co.*, 40 F. Supp. 2d 559 (D.N.J. 1998) .......................................................6 n.1

*CSX Transp., Inc. v. Norfolk So. Ry. Co.*, No. 2:18-cv-530,
    2019 WL 4564564 (E.D. Va. Sept. 9, 2019) ................................................................................6

*E.I. du Pont de Nemours & Co. v. Kolon Inds., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .........................................................................2-3, 4, 7, 8-9, 10, 12

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485 (2nd Cir. 2004) ...............................5

*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ...........................................3

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ..................................................................3, 4

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................................. 4-5

**Statutes**

15 U.S.C. § 2 (Sherman Antitrust Act, Section 2) .........................................................................2, 5

15 U.S.C. § 15 (Clayton Act, Section 4) ............................................................................................5

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................................2

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................2, 7

I.      INTRODUCTION

Albemarle Corporation ("Albemarle") brought this case against Olin Corporation ("Olin") for monopolization and attempted monopolization of a relevant market for chlorine. As discussed below with specific references to the complaint, Albemarle alleges that Olin is the largest producer of chlorine in North America, that the relevant chlorine market is characterized by high barriers to entry and persistently low supply, and that Olin is so dominant in that market that it can unilaterally control the price of chlorine without regard to how its potential rivals might react. Albemarle also alleges that the relevant chlorine market is largely subject to long-term exclusive supply contracts—including one between Albemarle and Olin—and that Olin has been using its monopoly power to systematically force its customers to agree to higher-than-competitive long-term contract pricing (what Olin's CEO has referred to as the company's pricing "ratchet" that "turns only one way"). Albemarle further alleges that Olin has been achieving that objective at least in part by engaging in predatory conduct toward buyers, including by strategically reducing overall supply and then threatening to—and in some instances actually proceeding to—reduce supply or cut off supply altogether unless the buyers renegotiate their contracts to acquiesce in Olin's artificially inflated prices. Olin can behave this way because of its high confidence—as demonstrated by its threats—that customers will have nowhere else to turn for needed supply.

By pursuing these tactics, Olin has extracted tens if not hundreds of millions of dollars from customers, while simultaneously using exclusive supply contracts to try to prevent competitors from taking those customers' business. And Olin's dominance is such that its conduct has artificially inflated the price of chlorine in the relevant market as a whole, so even a buyer fortunate enough to eventually locate an alternative source in a tight market—like Albemarle—must still pay prices substantially higher than it would have had to pay in a

competitive market. In the face of these and other well-pled allegations—many of which are based on publicly available quotes from Olin's CEO and other executives—that fully support Albemarle's claims, Olin's motion to dismiss ignores key facts alleged in Albemarle's complaint and mischaracterizes others, in addition to relying impermissibly on materials outside the complaint that do not even support Olin's position. If the correct legal standard is applied to the facts that Albemarle has actually pled, Olin's motion must be denied.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." As such, it "does not need detailed factual allegations," and factual allegations that "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face" are sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In ruling on a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," and "all reasonable inferences must be drawn in favor of the complainant." *E.I. du Pont de Nemours & Co. v. Kolon Inds., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). And the Court "evaluates the complaint in its entirety" rather than piecemeal. *Id*. As discussed below, Olin's motion consistently asks the Court to violate this standard by disregarding Albemarle's well-pled factual allegations, drawing inferences in Olin's favor, and analyzing parts of Albemarle's complaint in isolation from the others.

## III.    ARGUMENT

To state a monopolization claim under Section 2 of the Sherman Act, Albemarle had to plead two elements: that Olin possesses monopoly power in a relevant market, and that Olin has willfully acquired or maintained that power. *Kolon*, 637 F.3d at 441, 450. And to state an attempted monopolization claim, Albemarle had to plead three elements: that Olin used

2

anticompetitive conduct, with specific intent to monopolize, and a dangerous probability of success. *Id*. at 454. Albemarle has amply pled all of these elements, either by alleging facts that establish them directly or by alleging facts that afford the Court a basis to draw the necessary reasonable inferences in Albemarle's favor—and that is all that is required at this stage. Olin has challenged the legal sufficiency of Albemarle's complaint on just three narrow grounds extracted from the general elements of Albemarle's Section 2 claims: monopoly power, antitrust injury, and exclusionary conduct. Therefore, we address each of those specific topics in turn.

### A. Albemarle has directly alleged Olin's monopoly power in the relevant market, including through the public statements of Olin's own CEO

Monopoly power is "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (citing *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956)). Albemarle alleges that the relevant market is railcar merchant chlorine in North America. (Doc. 1, ¶¶18-28.) Albemarle also alleges facts to show directly that Olin has the power to control prices in that market. Olin has been the largest producer of chlorine in North America since 2015, and in late 2020 it completed what it calls its "building phase" and embarked on a "leading phase" to exploit its "#1 position in every product and geography." (*Id*., ¶¶30, 33.) From that point onward, Olin's CEO admitted, Olin was setting "an ever-rising floor on the unit … profit we will accept." (*Id*., ¶6.) Olin's CEO also described Olin's chlorine pricing as a "ratchet": "Our pricing only turns one way and does not reverse." (*Id*., ¶38.) Olin can unilaterally adjust its production rates to raise prices without being concerned about the potential reaction of any competitor. (*Id*., ¶¶35, 40. 79.) Olin has strategically and unilaterally withdrawn or otherwise manipulated supply in the relevant market to drive up the price. (*Id*., ¶¶42-53.) And Olin has been able to continue increasing its contract pricing, even during specific time windows when overall market index pricing has decreased. (*Id*., ¶¶76-77, 80.)

3

Further, the Fourth Circuit has explained that conditions of low supply and high barriers to entry into the market are relevant to the analysis of monopoly power at the pleading stage. *Kolon*, 637 F.3d at 451 ("Here, the district court assumed that Kolon adequately pled possession of monopoly power. That assumption was correct, given that Kolon pled, among other things, that: numerous barriers to entry into the … market exist and supply is low."). Albemarle has alleged those factors here. First, the cost and difficulty of building new chlorine production facilities creates high barriers to entry. (Doc. 1, ¶16.) Next, because of chlorine's dangerous properties, it is neither stored for any significant length of time nor imported in significant quantities, helping to keep supply in the relevant market limited. (*Id.*, ¶¶17, 20.) And Olin has publicly stated that supply is tight in the chlorine market and no new sources of supply will become available in the near term to keep up with demand. (*Id.*, ¶¶2, 34, 40.)

Collectively, these allegations show directly that Olin has the power to control prices in the relevant market and therefore satisfy the Supreme Court's definition of monopoly power. Olin argues that the complaint is legally insufficient because Albemarle does not allege Olin's specific share of the relevant market. But market share, especially at the pleading stage, is merely a proxy for monopoly power, not an essential element of a Section 2 claim. *See Grinnell*, 384 U.S. at 571 ("The existence of [monopoly] power **ordinarily may be inferred** from the predominant share of the market.") (emphasis added). Nor does Olin cite any cases to support its position that Albemarle must plead Olin's specific market share to enable the Court to infer monopoly power, when Albemarle can instead plead—and has pled—facts that directly demonstrate Olin's monopoly power. The law is to the contrary. *See United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) ("a firm is a monopolist if it can profitably raise prices substantially above the competitive level," so "[w]here evidence indicates that a firm has in fact

4

profitably done so, the existence of monopoly power is clear."), *cert. denied*, 534 U.S. 952 (2001); *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 500 (2nd Cir. 2004) (monopoly power "can be proven directly through evidence of control over prices or the exclusion of competition.").

In addition, Albemarle alleges that Olin deliberately ceased its longstanding practice of providing its chlorine production figures for inclusion in industry statistics during the same time frame in which it commenced the other conduct described in the complaint. (Doc. 1, ¶¶55-56.) As a result, only Olin itself possesses the information that would be needed to calculate its current share of the relevant market. Therefore, all that Albemarle and the Court have to go on at the pleading stage is Olin's actual behavior in the marketplace, which is more than sufficient to plausibly demonstrate Olin's monopoly power.

  **B.**  **Albemarle, as a customer-plaintiff, has alleged antitrust injury in the form of paying higher-than-competitive prices resulting from Olin's monopolistic conduct**

As the Supreme Court recently stated, "A claim that a monopolistic retailer … has used its monopoly to overcharge consumers is a classic antitrust claim." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1519 (2019). Construing Section 2 of the Sherman Act and Section 4 of the Clayton Act, the Court further explained, "The broad text of § 4—'any person' who has been 'injured' by an antitrust violator may sue—readily covers consumers who purchase goods or services at higher-than-competitive prices from an allegedly monopolistic retailer." *Id*. at 1520. That is the type of antitrust injury that Albemarle alleges in this case, which is also brought under Section 2 of the Sherman Act and Section 4 of the Clayton Act. (Doc. 1, ¶6.)

Albemarle alleges that, because of Olin's wrongful conduct, Albemarle was forced to pay artificially inflated prices for chlorine. First Albemarle was coerced into acceding to Olin's demands to pay more than the parties' freely negotiated contract price to Olin itself. (Doc. 1,

¶¶70, 83.) And when Olin began refusing to supply some or all of Albemarle's requirements, Olin had to find alternative sources of supply—but the pricing of those alternative sources had likewise been inflated by Olin's exploitation of its monopoly power, which affected the relevant market as a whole. (*Id.*, ¶¶84, 86.) In other words, but for Olin's conduct, Albemarle would not have had to pay higher-than-competitive prices for chlorine to Olin or to any other supplier. These allegations establish antitrust injury under *Apple Inc. v. Pepper* and the relevant statutes. *See also CSX Transp., Inc. v. Norfolk So. Ry. Co.*, No. 2:18-cv-530, 2019 WL 4564564, at *12 (E.D. Va. Sept. 9, 2019) ("antitrust injury is not limited to those situations where a competitor is completely shut out of an entire market, but may include reduction of output, increase in price, or deterioration in quality.") (citation and internal quotation omitted).[1]

      Instead of acknowledging these basic principles of antitrust injury in the monopolization context, Olin ignores what Albemarle has actually alleged and improperly attempts to draw inferences in its own favor to make two misguided points. First, Olin appears to duplicate its exclusionary conduct argument—discussed below—by arguing that because (in Olin's view) Albemarle has not pled the requisite anticompetitive conduct, it follows that Albemarle has not alleged antitrust injury. (Doc. 13 at 16-17.) But as explained in the following section of this memorandum, Albemarle's complaint does allege predatory and exclusionary conduct by Olin, in the form of exclusive long-term supply agreements combined with other relevant predatory conduct directed at customers like Albemarle, and the relevant antitrust injury (Albemarle's payment of higher-than-competitive prices) links directly and plausibly to that conduct. Second,

---

[1] Olin's attempt to argue antitrust injury at the pleading stage is also premature. An analysis of antitrust injury is "more properly conducted after discovery" and is "not typically resolved through motions to dismiss." *Continental Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 569 n.25 (E.D. Va. 2000) (citing, respectively, *CSR Ltd. v. Fed. Ins. Co.*, 40 F. Supp. 2d 559, 566 (D.N.J. 1998) and *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 875 (3d Cir. 1995)).

Olin argues in conclusory fashion that Albemarle is really just restating its state-court contract counterclaim in antitrust guise, and there is no antitrust injury from a breach of contract. (*Id.* at 17-18.) But as the Court can readily conclude from the relevant paragraphs of the complaint and the authority referenced above, Albemarle is doing no such thing. Albemarle's breach of contract counterclaim remains pending in state court, and Albemarle has pled the elements of its conceptually distinct antitrust claims in this Court.

Finally, Olin ranges far outside Albemarle's complaint in an attempt to support its arguments by mischaracterizing Albemarle's counterclaim against Olin in the state-court contract case. Specifically, Olin claims at least twice in its brief that Albemarle's counterclaim somehow admits that the pricing term in Olin's supply contract with Albemarle represented a "better-than-open-market price (almost half of the open-market price, according to Albemarle's counterclaim in the contract case)." (Doc. 13 at 1-2; *id.* at 6-7.) In other words, Olin tries to insinuate that the price Albemarle was able to obtain from an alternative supplier represents competitive-market pricing, so Albemarle has not suffered antitrust injury.

This argument fails for two reasons. First, Albemarle's complaint does not rely on or even reference its counterclaim in the state-court contract case—it references only Olin's bringing of that lawsuit. (Doc. 1, ¶87.) So for the Court to consider the counterclaim in resolving Olin's motion to dismiss, it would first have to convert the motion to one for summary judgment and allow Albemarle to complete discovery before it rendered a decision. *Kolon*, 637 F.3d at 448-49.

Even more importantly, however, Olin's argument turns the Rule 12(b)(6) motion-to-dismiss standard on its head by suggesting that the Court should rule in its favor based on factual allegations by Olin (or rather, by its counsel) that contradict well-pled factual allegations in

7

Albemarle's complaint. Albemarle has *not* alleged that the price it was able to obtain from an alternative chlorine supplier represented a competitive-market price. On the contrary, Albemarle alleges that "because Olin's monopolistic conduct since 2020 has artificially inflated the price of chlorine in the North American railcar merchant market, Albemarle can only obtain chlorine at a price substantially higher than the freely negotiated price agreed" in Albemarle's supply contract with Olin. (Doc. 1, ¶86.) Further, Albemarle expressly alleges that it was the original price term in its supply contract with Olin that represented a genuine market price, because that term was freely negotiated by the parties at arm's length before Olin embarked on its anticompetitive course of conduct in the relevant market. (*Id*., ¶¶68-69, 86.) And there is nothing inconsistent with those allegations in Albemarle's counterclaim in the contract case, which simply states in relevant part that "Albemarle was forced to source supply of the chemicals for April 2023 at materially higher prices (almost double for chlorine) than those promised under the Contract." (Doc. 13-2 at ECF page 26, ¶41.) Thus, even if the Court could properly consider that state-court counterclaim material in the context of a motion to dismiss in this case, it does not support Olin's argument and is fully consistent with the allegations of Albemarle's antitrust complaint.

    **C.    Albemarle has alleged predatory and exclusionary conduct by Olin in the form of long-term exclusive supply contracts, coupled with coercive attempts to shift the pricing terms of those contracts in Olin's favor**

As the Fourth Circuit has held, following Supreme Court precedent, "exclusive dealing arrangements can constitute an improper means of acquiring or maintaining a monopoly." *Kolon*, 637 F.3d at 441, 451 (citations omitted). In *Kolon Industries*, the Fourth Circuit reversed a district court's order dismissing a monopolization claim and held the plaintiff had adequately pled monopolization and attempted monopolization claims where the *only* exclusionary conduct alleged took the form of exclusive supply contracts, because contracts of that kind limit potential rivals' access to customers and thereby preclude competition. *Id*. at 451-52, 453. At the pleading

8

stage, the Court need not analyze with specificity the magnitude of the exclusive contracts' effect on competition, because the plaintiff typically will not have access to that kind of information until after discovery. *Id*. at 452 n.12.

Here, Albemarle has alleged that all of Olin's actions to constrain supply and raise price in the relevant chlorine market took place against a background of long-term exclusive supply agreements. For example, Albemarle alleges that in the relevant market, "almost all available production is pre-committed to buyers under long-term supply contracts." (Doc. 1, ¶28.) Albemarle quotes Olin's own statements that much of its chlorine production was tied up in such contracts—in one calendar quarter alone, it claimed to have shifted 30% of its ongoing business from one set of long-term supply contracts to another. (*Id*., ¶¶63-64.) And the contracts in question are exemplified by the relevant provisions of Albemarle's own contract, which required Albemarle to buy all of its chlorine requirements from Olin. (*Id*., ¶66.) Thus, when Olin forced its customers to renegotiate the terms of their supply contracts, it is reasonable to infer that the customers were committing themselves to pay Olin's demanded higher prices on an exclusive long-term basis. As Albemarle alleges, again quoting Olin itself:

> On the company's January 27, 2023 earnings call, the executive responsible for the division that includes chlorine told analysts, "On the positive side, our merchant chlorine ratchet continues to turn only one way. Chlorine pricing is expected to step up through 2023 as legacy contracts end." The same executive noted that Olin had **"baked in or locked in a lift in chlorine prices for this year over last year of at least $100 million."**

(*Id*., ¶76 (emphasis added).) And Olin anticipates continuing to move new customers to higher-priced long-term exclusive contracts beyond 2023. (*Id*., ¶77.)

Albemarle also pleads that Olin's use of exclusive long-term supply agreements has been coupled with predatory, coercive tactics to keep customers in line. Olin took significant steps to keep supply tight by taking production facilities permanently offline, by operating the remaining

9

facilities at reduced rates, and by taking advantage of force majeure declarations to curtail production more than necessary. (Doc. 1, ¶¶35-36, 42-53.) Then it threatened customers like Albemarle with reductions or interruptions to current supply, as well as with possible deprivation of all supply in the future, given Olin's confidence that customers would have nowhere else to turn if Olin cut them off. (*Id.*, ¶¶71-75, 84-85.) While it is true that Albemarle was ultimately able to find an alternative source of chlorine supply after Olin refused to meet its requirements, that was a matter of luck, the situation could easily have turned out quite differently, and Albemarle still has to pay inflated prices to its new supplier because of the effect of Olin's conduct in the relevant market. (*Id.*, ¶¶84, 86.) None of this legitimizes Olin's predatory conduct, and Olin clearly believed that Albemarle would not succeed in finding an alternative source of chlorine supply at all—otherwise its repeated threats to cut off Albemarle's supply would have made no sense. In other words, Albemarle has pled factual allegations from which the Court can reasonably infer not only that Olin used long-term supply contracts to foreclose competition, but that Olin did so as part of an intentional strategy to bolster its ability to use its monopoly power, along with threats and coercion, to raise the prices charged under those contracts. Under *Kolon Industries*, that is more than enough to overcome Olin's motion to dismiss.

   Finally, under the nominal heading of its exclusionary conduct argument, Olin spends almost six pages of its brief (Doc. 13 at 10-15) setting up and knocking down two straw-man arguments that are not truly germane to whether Albemarle's complaint states valid claims for monopolization and attempted monopolization. *First*, Olin argues that Albemarle cannot base its claims on a theory that Olin refused to share competitively sensitive pricing information with third-party publications. (Doc. 13 at 10-12.) But Olin's motion improperly compartmentalizes the analysis of its conduct and misconstrues the complaint on this point instead of, as required,

10

analyzing the complaint as a whole and drawing all reasonable inferences in Albemarle's favor. The complaint alleges that, whereas Olin had previously reported chlorine transaction pricing to third-party information services like IHS Markit, it stopped doing so around the same time that it embarked on the other conduct described in the complaint. (Doc. 1, ¶¶57-61.) And it alleges that Olin did this "to obfuscate the effects of its monopolistic conduct and to deprive market participants of access to accurate information about the available supply and market pricing of chlorine," leaving Olin "free to portray its inflated chlorine prices as 'market' prices and pressure buyers to agree to Olin's terms for fear that no alternative supply would be available to them in a tight market." (*Id.*, ¶54.) These allegations are not pled as some sort of free-standing theory of antitrust liability as Olin seems to argue, but rather as facts that tend to show Olin's intent and how Olin undertook different but coordinated actions within the same general time period to put into effect what it called its "leading" phase to exploit its "#1 position in every product and geography." (*Id.*, ¶33.) Notably, Olin's argument does not discuss Albemarle's allegations about Olin's simultaneous cessation of reporting its production figures, which go to the same point. (*Id.*, ¶¶55-56.)

*Second*, Olin argues that Albemarle has not adequately alleged that Olin's state-court beach of contract lawsuit against Olin is "sham litigation" for purposes of a *Noerr-Pennington* analysis. (Doc. 13 at 13-15.) But Olin immediately undercuts its own argument by proclaiming that the concept of "sham litigation" in the antitrust context only applies to lawsuits between competitors (*id*. at 14)—and Albemarle is Olin's customer, not its competitor. It follows that Albemarle is *not* pleading a "sham litigation" claim against Olin in this case. Indeed, Olin's lawsuit does not even feature prominently in Albemarle's complaint, being mentioned in only three paragraphs outside of Counts I and II. (Doc. 1, ¶¶81-82, 87.) The gist of Albemarle's

11

allegations about that lawsuit is that it was part and parcel of Olin's course of bullying, coercive conduct with the goal of inducing Albemarle to enter into a new long-term exclusive supply arrangement at a higher-than-competitive price. For purposes of a motion to dismiss, those allegations cannot be analyzed in isolation from the rest of Olin's conduct—and, as with the allegations about Olin's change in its longstanding practice with respect to reporting its transaction pricing, they go to demonstrate that Olin's conduct as a whole was intended to exploit its monopoly power to raise prices using predatory means.

In short, argument sections I.B and I.C of Olin's opening brief are misdirected, attacking imaginary independent theories of liability that are not actually presented in Albemarle's complaint. They have no bearing on whether Albemarle has pled all elements of the claims it *does* assert. The Court should disregard these immaterial arguments in ruling on the motion to dismiss.

### IV.   CONCLUSION

Consistent with the Fourth Circuit's precedential opinion in *Kolon Industries*, cited frequently throughout this memorandum, Albemarle has pled facts that satisfy all of the challenged elements of its claims (as well as the elements Olin has not elected to challenge in its motion to dismiss). If the Court concludes that additional factual allegations would be necessary to properly plead either of Albemarle's claims, Albemarle respectfully requests leave to file an amended complaint to remedy any such gaps. But Albemarle submits that, accepting its existing allegations as true, drawing all reasonable inferences in its favor, and evaluating the complaint as a whole, Albemarle has already stated a plausible right to relief for Olin's monopolization and attempted monopolization. Therefore, Olin's motion should be denied, Olin should be required to answer the complaint, and the case should proceed to discovery.

Dated: June 9, 2023

Respectfully submitted,

/s/ *William T. DeVinney*
William T. DeVinney (VSB 94032)
BRIGLIA HUNDLEY, PC
1921 Gallows Road
Suite 750
Tysons Corner, Virginia 22182
Tel: (703) 924-8076
Fax: (703) 883-0899
wdevinney@brigliahundley.com

Jeffry W. Duffy (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, Pennsylvania 19103
Tel: (215) 564-2916
Fax: (215) 568-3439
jduffy@bakerlaw.com

*Attorneys for Plaintiff*
*Albemarle Corporation*

**CERTIFICATE OF SERVICE**

I certify that, on June 9, 2023, I caused this Albemarle Corporation's Memorandum of Law in Opposition to Olin Corporation's Motion to Dismiss to be served via the Court's electronic filing system on the following:

Corey Roush
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006

Robert George Lian, Jr.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave NW
Washington, DC 20036

                                                                /s/ *William T. DeVinney*
                                                                William T. DeVinney (VSB 94032)