**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ALBEMARLE CORPORATION, | |
| Plaintiff, | |
| v. | Civil No. 1:23-cv-600 |
| OLIN CORPORATION, | |
| Defendant. | |

**REBUTTAL BRIEF IN SUPPORT OF OLIN CORPORATION'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 3

**STANDARD OF REVIEW** ........................................................................................................... 4

**ARGUMENT** .................................................................................................................................. 5

    **I.**    **ALBEMARLE FAILS TO ALLEGE ANY EXCLUSIONARY CONDUCT TENDING TO CREATE OR MAINTAIN A MONOPOLY, AND ALBEMARLE'S NEW EXCLUSIVE DEALING THEORY DOES NOT SAVE IT.** ..........................................................................5

    **II.**   **ALBEMARLE FAILS TO ALLEGE ANY HARM TO COMPETITION OR ANTITRUST INJURY.** ....................................................11

    **III.**  **ALBEMARLE FAILS TO ALLEGE MONOPOLY POWER IN A PUTATIVE "NORTH AMERICAN RAILCAR MERCHANT CHLORINE" MARKET.** ....................................................................13

**CONCLUSION** ............................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Agnew v. United Leasing Corp.*, Civil Action No. 2:14cv525, 2015 U.S. Dist. LEXIS 196119 (E.D. Va. May 19, 2015) .................................................................................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 4, 5

*Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869 (1995) ................................................................ 11

*Coleman v. Md. Ct. of Apps.*, 626 F.3d 187 (4th Cir. 2010) ........................................................ 8

*Continental Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556 (E.D. Va. 2000) ......... 11

*Davis v. Cole*, 999 F. Supp. 809 (E.D. Va. 1998) ........................................................................ 8

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) ..................................................... 9, 15

*E. Coast Repair & Fabrication, LLC v. United States*, 492 F. Supp. 3d 625 (E.D. Va. 2020) .... 12

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011).... 8, 9, 10, 14, 15, 16

*Eastman Kodak Co. v. Image Technical Servs., Inc*., 504 U.S. 451 (1992) ................................ 14

*Ellis v. Cates*, 178 F.2d 791 (4th Cir. 1949) .............................................................................. 12

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485 (2nd Cir. 2004) .......................... 17

*Goodall v. LVNV Funding, LLC*, Civil Action No. 3:22-cv-534, 2023 U.S. Dist. LEXIS 92922 (E.D. Va. May 25, 2023) ................................................................................................. 12

*Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909 (E.D. Va. 2004) ......................... 8

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014) .................... 14

*M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160 (4th Cir. 1992) ................................................................................................................................ 14

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989) ............................ 8

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961)..........................................................8

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)....................................................16

*Yampierre v. Balt. Police Dep't*, Civil Action No. ELH-21-1209, 2022 U.S. Dist. LEXIS 149017

   (D. Md. Aug. 18, 2022)...................................................................................................................8

**Treatises**

IIA Philip E. Areeda & Herbert Hovenkamp, Antitrust Law (4th ed. 2004)..................................6

**INTRODUCTION**

In its Motion to Dismiss (Doc. 12) and supporting Memorandum (Doc. 13, hereinafter "Memo in Support"), Olin explained that Albemarle (1) failed to allege exclusionary conduct (Memo in Support at 6-15); (2) failed to allege harm to competition or antitrust injury (Memo in Support at 15-18); and (3) failed to allege monopoly power in its putative market (Memo in Support at 18-20)—all of which Albemarle must do for its case to move forward. In Albemarle's Opposition, Albemarle does not contest that these are all necessary.[1] Instead, Albemarle takes a unique—and ultimately unavailing—approach to each of Olin criticisms.

First, Albemarle responds to the assertion that it failed to plead exclusionary conduct by coming up with a new, unpled theory based on "exclusive dealing." Not only is this new theory absent from the Complaint, it is inconsistent with Albemarle's alleged theory of harm and inconsistent with the facts that are alleged in the Complaint. Ironically, the cases Albemarle relies on in support of its new theory highlight Albemarle's failure to allege antitrust injury or to plausibly allege monopoly power because they point out the need for significant foreclosure of competition in exclusive dealing cases, usually achieved by having a very high market share. And Albemarle neither alleged high market shares nor have they alleged any foreclosure—much less significant enough foreclosure to support a monopolization or attempted monopolization claim.

Second, Albemarle attempts to sidestep the necessary element of antitrust injury by arguing that pleading higher prices is sufficient and that this Court should ignore contradictory statements that Albemarle has made to other courts. Albemarle is wrong on both counts. For Albemarle's

---

[1] Albemarle reverses the order of these arguments in its Opposition. In order to facilitate the Court's review, Olin will present its rebuttal argument here in the same order the issues were presented in the opening Memorandum (no exclusionary conduct, no antitrust injury, no monopoly power), which is in the reverse order of Plaintiffs' Opposition brief (Doc. 16, hereinafter "Opp.").

alleged injuries (higher prices) to be "antitrust injuries"—as opposed to contract or other damages—they must be injuries that are of a type that antitrust was designed to protect against *and must stem from what makes the defendant's actions anticompetitive*.  On this front, Albemarle asserts that the anticompetitive action is Olin's contract with Albemarle, but by Albemarle's own admission, the higher prices it paid do not stem from that contract but from Olin purportedly not living up to that contract.

To counter Olin's point that Albemarle's allegations do not sufficiently plead monopoly power, Albemarle sets up a straw-man suggesting that Olin's criticism is simply that "Albemarle does not allege Olin's specific share of the relevant market," Opp. at 4, and then deceptively claims that its allegations throughout the Complaint relate to the "relevant market" even though they plainly do not pertain to the market that Albemarle pled.  Indeed, under the Complaint's well-pleaded allegations, the antitrust market at issue here—the "North American railcar merchant chlorine" market—excludes 93.6% of all chlorine produced in North America such that statements about all "chlorine production" and barriers to entry in chlorine production say nothing about the market conditions that affect "North American railcar merchant chlorine."  In any event, the only well-pleaded allegations specific to Olin's alleged monopoly power in the North American railcar merchant chlorine market relate to Albemarle's purchases in that market; those allegations reveal that Albemarle was able to secure short and long-term supply from alternative sources after Olin purportedly tried to assert its monopoly power.  *See* Compl. ¶ 86.

## STANDARD OF REVIEW

A court should dismiss a complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's "obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

4

*Id.* at 555 (internal citation omitted). In fact, a claim lacks "facial plausibility" unless the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

## ARGUMENT

Albemarle and Olin appear to agree that to maintain its antitrust suit against Olin, Albemarle must adequately allege exclusionary conduct by Olin and that that exclusionary conduct harmed competition, which in turn caused Albemarle to be injured. They also appear to agree that Albemarle must plausibly allege that Olin possesses monopoly power *in the alleged market* (as opposed to a different market) or the dangerous probability of acquiring it.

**I.   ALBEMARLE FAILS TO ALLEGE ANY EXCLUSIONARY CONDUCT TENDING TO CREATE OR MAINTAIN A MONOPOLY, AND ALBEMARLE'S NEW EXCLUSIVE DEALING THEORY DOES NOT SAVE IT.**

In its Memo in Support, Olin went through each of the potential sources of "exclusion" offered by Albemarle's Complaint at Paragraph 91 and explained how they fell short of stating a Section 2 theory. *See* Memo in Support at 8-10 (merely charging a high price or restricting supply is not exclusionary); at 10-13 (refusing to provide competitively sensitive information to third parties is not exclusionary); and at 13-15 (Albemarle does not adequately plead a sham litigation case). Albemarle does not dispute Olin on these points; in other words, Albemarle does not argue that any of those acts alone sustains a Sherman Act Section 2 case. Instead, Albemarle concedes that some of these actions "are not truly germane to whether Albemarle's complaint states valid

---

[2] Olin is not seeking, as Albemarle asserts, to have any claims in the complaint be disregarded, to have any inferences drawn in Olin's favor, or to have the Court review parts of the Complaint in isolation. Opp. at 2. Rather, Olin argues that taking all of Albemarle's alleged facts in the Complaint together and drawing all reasonable inferences in favor of Albemarle, Albemarle's Complaint fails in three ways—each of which justify dismissal.

claims," *see* Opp. at 10; *see also id.* at 12 (describing Olin's refusal to provide pricing information to third parties and Olin's sham litigation as "imaginary independent theories of liability that are not actually presented in Albemarle's complaint"), and argues that the Court should "analyz[e] the complaint as a whole," *id.* at 11, and consider whether "Albemarle has pled all elements of the claims it *does* assert," *id.* at 12 (emphasis ironically in original).

Very well. Albemarle must plead *some* source of exclusionary conduct that led to an injury that Albemarle sustained. Having abandoned the only acts alleged in the Complaint that sounded in exclusion (excluding others from Olin's information and sham litigation),[3] Albemarle's Opposition offers a new theory—one that is entirely absent from and inconsistent with the Complaint: exclusive dealing.

*Exclusive dealing is not alleged in the Complaint.* As Olin pointed out in its original brief, it is entirely lawful for a monopolist to make unilateral decisions on pricing and output. *See* Memo in Support at 8-10. Albemarle has elected not to respond to this argument.[4] Instead, it "couple[s]" its allegations about pricing and output with a new "exclusive dealing" theory calling Olin's unilateral decisions "predatory, coercive tactics to keep customers in line." Opp. at 9. Albemarle brushes aside the fact, as admitted in the Complaint, that those "tactics" failed by asserting something that it did not assert in the Complaint—that Albemarle's ability "to find an alternative source of chlorine supply after Olin refused to meet its requirements, . . . was a matter of luck

---

[3] Restricting supply and charging high prices are not exclusionary. They do not exclude competitors or harm competition. IIA Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 720a (4th ed. 2004) ("Monopoly pricing and monopoly profits should not ordinarily be deemed either an 'exclusionary' act or an 'abuse' of monopoly power under § 2."). They encourage competition by pushing customers like Albemarle elsewhere.

[4] Albemarle's Opposition did not dispute this portion of Olin's Memorandum.

[that] could easily have turned out quite differently . . . ." *Id.* at 10.  Of course, it did not turn out differently, and neither Albemarle nor Olin's competitors were excluded from short or long term sales of railcar merchant chlorine.  Compl. ¶ 84 ("Olin's actions forced Albemarle to make up the shortfall by ***sourcing [railcar merchant] chlorine in the short term from an alternative supplier . . . .***") (emphasis added), ¶ 86 (explaining that after Olin tried to charge more for its railcar merchant chlorine, reduced supply, and sued Albemarle, "Albemarle realized it could no longer risk relying on Olin as its primary [railcar merchant] chlorine supplier and ***had no choice but to negotiate a new long-term supply contract with another supplier***") (emphasis added).

As to Albemarle's assertion that its Complaint "allege[s] predatory and exclusionary conduct by Olin in the form of exclusive long-term supply agreement," Opp. at 6; *see also* Opp. at 8 ("Albemarle has alleged predatory and exclusionary conduct by Olin in the form of long-term exclusive supply contracts."), that assertion is false.  While "exclusive" and "exclusionary" show up twenty-one times in Albemarle's response brief, there is not a single use of either word in Albemarle's Complaint.  Nor is a single contract identified as "exclusive" in the Complaint.  While the Complaint mentions "long-term supply contracts" several times, "long-term" and "exclusive" are not the same thing.  In addition, the Complaint makes clear that "long-term supply" contracts are not unique to Olin, but that "[w]ithin the merchant chlorine market (both pipeline and railcar), almost all available production is pre-committed to buyers under long-term supply contracts."  Compl. ¶ 28.  Albemarle not only does not call its "long-term supply contract" with Olin "exclusive" in the Complaint, it describes Olin as its "primary provider of chlorine," *id.* ¶ 5, and "primary chlorine supplier," *id.* ¶ 86, not its exclusive supplier.

Theories not pled in a complaint cannot serve as the basis for denying a motion to dismiss. "[I]t is [ ] 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion

7

to dismiss.'" *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)); *see also Davis v. Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) ("The court may not consider additional allegations when ruling on a motion to dismiss . . . ."). Indeed, allowing a case to move forward on an unpled theory would be to deny "the defendant fair notice of what the claim is and the grounds upon which it rests." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010)) (hereinafter "*Kolon Indus. I")*; *see also Yampierre v. Balt. Police Dep't*, Civil Action No. ELH-21-1209, 2022 U.S. Dist. LEXIS 149017, at *47 (D. Md. Aug. 18, 2022) ("A plaintiff is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.").

Putting the newness of Albemarle's theory aside, if the Court is inclined to infer that the references to long-term supply agreements in the Complaint are the underpinnings of a claim of exclusive dealing, the Court should keep in mind that Albemarle has alleged that it benefitted from its long-term contract and was harmed only when Olin tried to get out of the contract and when Albemarle had to buy railcar merchant chlorine from Olin's competitors. Put simply, there are no well-pleaded factual allegations in support of a theory that Olin imposed exclusive dealing provisions across a large enough portion of a well-defined market such that a would-be competitor was unable to enter and, as a result of that lack of entry, Albemarle was injured. *See Kolon Indus. I*, 637 F.3d at 451 ("[A]n exclusive dealing arrangement does not violate antitrust law unless its probable effect is to foreclose competition in a substantial share of the line of commerce affected.") (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 324 (1961)).

*Albemarle is not seeking to void its contract with Olin but to enforce it.* The irony of Albemarle's introduction of a "monopolization-via-exclusive dealing" theory is that its case is the logical opposite of a monopolization-via-exclusive dealing case. "Exclusive dealing" is a theory that a monopolist has prevented competitor entry by locking up demand across a large enough segment of a customer base using exclusive contracts such that would-be competitors cannot enter. The remedy in such a case is to void the exclusive dealing provisions, which unbinds customers from their contracts with the monopolist; and the damages that are typically awarded go to the foreclosed competitor and in some instances customers who paid higher *contractual* prices. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002) ("Similarly, with respect to the exclusive dealing components of the licensing agreements, the potential harm to consumers is that rival software firms or browsers will be foreclosed from access to consumers, denying consumers competitive choice and allowing supracompetitive pricing with respect to the software markets for which Microsoft has monopoly power.").

That is not the theory of Albemarle's harm. Albemarle does not allege that it was harmed by virtue of its contract with Olin. Nor does it allege that any competitors were excluded because Albemarle was in a contractual relationship with Olin. On the contrary, Albemarle is claiming harm from being unable to enjoy the benefits of its contract with Olin. It does not want out of its contract; it wants to keep Olin in. *See* Compl. ¶¶ 74-75 (alleging that Olin tried to renegotiate the contract and gave notice that it was terminating the contract).

The square-peg-in-a-round-hole nature of this 13th hour "exclusive dealing theory" is apparent when comparing Albemarle's claim to the one at issue in a case on which it relies heavily, *Kolon Indus. I*, 637 F.3d 435 (4th Cir. 2011). In *Kolon Indus. I*, the court rejected a motion to dismiss a claim that a monopolist was using exclusive dealing contracts in order to monopolize a

9

market. *Id.* The decision in *Kolon Indus. I* both correctly explains the nature of a monopolization-via-exclusive dealing claim and illustrates why Albemarle has not brought one. The plaintiff in *Kolon Indus. I* was a would-be competitor of DuPont for the service of para-aramid fiber products who brought suit alleging that DuPont was using "multi-year exclusive contracts with high-volume para-aramid fiber purchasers" in order to "limit[] the overall volume of para-aramid supply available to competition" with the effect being that the plaintiff was "severely limited . . . from competition for the most important customers in categories needed to gain a foothold for effective competition to DuPont." *Id.* at 452.

*Kolon Indus. I* thus involved (i) a competitor, (ii) alleging exclusive contracts, (iii) that had taken up so much of the market, they were preventing the plaintiff's entry, and (iv) seeking to void the exclusive contracts in order to be able to compete. Albemarle's claims are nothing like this. As noted above, Albemarle's Complaint does not mention a single "exclusive" contract, much less a bunch of Olin exclusive contracts that take up so much of the market that they prevent entry. Putting that aside, Albemarle is a customer that wishes the defendant would stay in its contract. Albemarle wants to *enjoy* the benefits of the contract, not have it rescinded to facilitate competition for Albemarle's business. In fact, the Complaint admits that Olin facilitated competition when it tried to charge higher prices because that led Albemarle "to negotiate a new long-term contract with another supplier." Compl. ¶ 86.

Once more: Albemarle's claim is the opposite of an "exclusive dealing" case (where someone is seeking the rescission of exclusive dealing provisions) and is instead a "contract damages" case (where a party to a contract sues to enjoy the benefits of—rather than to end—a contract).

## II. ALBEMARLE FAILS TO ALLEGE ANY HARM TO COMPETITION OR ANTITRUST INJURY.

In its Memo in Support, Olin explained how Albemarle's Complaint failed to allege "antitrust injury," which is to say an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *See* Memo in Support at 15-16 (collecting cases). Albemarle responds that "the relevant antitrust injury (Albemarle's payment of higher-than-competitive prices) links directly and plausibly" to "predatory and exclusive conduct by Olin, in the form of exclusive long-term supply agreements combined with other relevant predatory conduct directed at customers like Albemarle . . . ." Opp. at 6. Albemarle, thus, seems to think that by alleging higher-than competitive prices and predatory conduct (putting aside that Albemarle does not allege the stated predatory conduct), that it has adequately pled antitrust injury.[5] Albemarle is wrong.

What the Complaint fails to do is make any allegations linking the purportedly exclusionary conduct to Albemarle's alleged payment of supracompetitive prices. An antitrust injury based on "exclusive long-term supply agreements" would mean that Albemarle paid supracompetitive

---

[5] Albemarle confuses Olin's criticism of Albemarle's failure to allege antitrust injury with Albemarle's eventual need to prove antitrust injury and mischaracterizes precedent in the process. Opp. at 6 n.1. Albemarle purports to quote *Continental Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 569 n. 25 (E.D. Va. 2000) for the principle that antitrust injury "is 'not typically resolved through motions to dismiss.'" But the language Albemarle relies on is originally from a Third Circuit case that *Continental Airlines* quoted in a parenthetical for the unremarkable proposition that "[T]he existence of an 'antitrust injury' [is] not typically resolved through motions to dismiss." *Id.* (quoting *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 875 (1995)). The *Continental Airlines* court absolutely did assess whether the plaintiff had adequately pled (versus determining the existence of) antitrust injury. It found: "[T]he complaint alleges that defendants' agreement *restrained competition* among airlines at Dulles and that, *as a result, plaintiffs lost customers*, i.e., market share, they would otherwise have won by virtue of their investment in, and adoption of, a passenger-friendly carry-on baggage policy. *This is classic antitrust injury*." *Id.* at 569 (emphasis added).

prices to Olin because Olin entered into exclusive contracts covering a significant portion of the alleged market thereby excluding a competitor who would have offered Albemarle lower prices. We have none of that here because Albemarle's Complaint allegations do not fit with a monopolization-by-exclusive dealing theory. Instead, "Albemarle expressly alleges that it was the original price term in its supply contract with Olin that represented a genuine market price, because that term was freely negotiated . . . ." Opp. at 8. And the supracompetitive prices it paid were when Olin "increased the price it required Albemarle to pay for chlorine *beyond the freely negotiated price agreed in the Contract*," Compl. ¶ 83; when Albemarle "sourc[ed] chlorine in the short term from an alternative supplier, *id.* ¶ 84; and when Albemarle "negotiate[d] a new long-term supply contract with another supplier, *id.* ¶ 86. There are no allegations that any competitor was excluded. Instead, Albemarle acknowledges that it was able to get alternative supply elsewhere and was even able "to negotiate" a contract with another supplier. What Albemarle agrees to pay other suppliers after negotiating a contract with them is not considered a supracompetitive price—it is the competitive price. And that competitive price was almost double the price for chlorine in Albemarle's legacy contract with Olin. *See* Opp. at 8.[6]

---

[6] Albemarle suggests that in order for this Court to consider the public claims that Albemarle has filed with another court against Olin, this Court would need to convert the motion to dismiss to a motion for summary judgment and allow Albemarle to seek discovery. Opp. at 7. Once again, Albemarle is wrong. "A court may [] take judicial notice of matters of public record and 'adjudicative facts' pursuant to Federal Rule of Evidence 201(b) when considering a Rule 12(b)(6) motion." *Goodall v. LVNV Funding, LLC*, Civil Action No. 3:22-cv-534, 2023 U.S. Dist. LEXIS 92922, at *5 (E.D. Va. May 25, 2023); *see also Ellis v. Cates*, 178 F.2d 791, 793 (4th Cir. 1949) (allowing consideration of documents from prior judicial proceedings on a Rule 12(b)(6) motion); *E. Coast Repair & Fabrication, LLC v. United States*, 492 F. Supp. 3d 625, 632 (E.D. Va. 2020) (holding that certain documents were "properly before the court as public documents in another proceeding"); *Agnew v. United Leasing Corp.*, Civil Action No. 2:14-cv-525, 2015 U.S. Dist. LEXIS 196119, at *13 (E.D. Va. May 19, 2015) ("tak[ing] judicial notice of the documents submitted from the prior state judicial proceedings").

There are several steps between Olin entered "exclusive long-term supply agreements" and engaged in other "predatory and exclusionary conduct" to Albemarle adequately pleading that it suffered the "relevant antitrust injury as a result of Olin's actions;" the Complaint does not take any of them.

**III.   ALBEMARLE FAILS TO ALLEGE MONOPOLY POWER IN A PUTATIVE "NORTH AMERICAN RAILCAR MERCHANT CHLORINE" MARKET.**

In its Memo in Support, Olin argues that Albemarle failed to plausibly allege monopoly power in a putative "North American railcar merchant chlorine" market by failing to allege any facts related to Olin's market power, including Olin's purported market share, in the North American railcar merchant chlorine market. Albemarle acknowledges that it did not allege market shares in the Complaint, *see* Opp. at 4-5, but argues that it alleged facts "show[ing] that Olin has the power to control prices in" the North American railcar merchant chlorine market, *id.* at 3. Albemarle then goes on to list several of the allegations that it made in the Complaint claiming falsely that the allegations relate to "the relevant market." *Id.* at 3-5. In reality, however, Albemarle pleads a North American railcar merchant chlorine market but then alleges facts related to Olin's purported market power in an overall chlorine market (and at times the overall merchant chlorine market).

Indeed, Albemarle's arguments in its Opposition miss the significance of the Complaint's defined market. The Complaint alleges an antitrust market for "North American railcar merchant chlorine." This antitrust market, which Olin is alleged to have monopolized, comprises less than 6.5% of all chlorine produced in North America. *See* Compl. ¶¶ 23-24 (noting that 32% of all chlorine is available to buyers in the merchant market and about 20% of that chlorine is delivered by railcar (20% of 32% is 6.4%)), Memo in Support at 19. Albemarle offers nothing as to Olin's

13

monopoly power in this defined market, not even the allegation that Olin is "the largest" participant in it.

On the contrary, Albemarle's "direct evidence" is all about chlorine production *generally*—93.6% of which is not part of Albemarle's defined antitrust market. And even as to a broader, all-chlorine market, all that the allegations collected at page 3 of the Opposition show is that Olin might have some measure of *market power* in an "all-chlorine" market (not Albemarle's alleged market).[7] Albemarle relies on *Kolon Indus. I,* 637 F.3d 435 (4th Cir. 2011) for other of its arguments. But that case, which reached the Fourth Circuit twice, teaches that "a showing of [the defendant's] 'market power' is not itself sufficient to prove that [the defendant] possesses 'monopoly power.'" *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014) (hereinafter *Kolon Indus. II*). Indeed, courts in this circuit typically set the floor at 70% market share. *See Kolon Indus. I,* 637 F.3d at 450 (collecting cases); *see also Eastman Kodak Co. v. Image Technical Servs., Inc*., 504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, of course, something greater than market power under § 1."); *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 168 (4th Cir. 1992) (finding that allegations of less than 50% market share "should usually be rejected" even for attempted monopolization claims).

The mismatch continues into Albemarle's barriers to entry argument. The only substantive allegation of barriers to entry in the Complaint is that new "[p]roduction facilities for chlorine require large capital investments and are subject to significant regulatory and permitting requirements." Compl. ¶ 16. However, these allegations say nothing of the ability of the producers

---

[7] Even if one generously says that the alleged facts on page 3 of the Opposition go to the overall merchant market, the Complaint makes clear that railcar merchant chlorine only comprises 20% of that.

14

of 93.6% of North American chlorine production that are not in Albemarle's alleged market to switch away from self-consumption and pipeline sales *into* selling "railcar merchant chlorine" if prices rose in that market alone. The Complaint only alleges barriers to entry into greenfield chlorine production.

Albemarle raises the red herring argument that Olin does not "cite any cases to support its position that Albemarle must plead Olin's specific market share to enable the Court to infer monopoly power," Opp. at 4. First, that is not accurate; Olin cited several cases, including *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211, 213 (4th Cir. 2002). *See* Memo in Support at 18-19. Second, and more importantly, Albemarle's failure is not simply that it does not allege market shares; the failure is that Albemarle does not allege that Olin is the largest seller in the North American railcar merchant chlorine market or offer facts supporting the idea that Olin has market (or monopoly) power in *that* market.

Albemarle does not cite, discuss, or distinguish *Dickson*, even though *Dickson* involved an alleged monopolist who entered into exclusive dealing arrangements. In *Dickson,* the Fourth Circuit upheld the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) because, in the absence of share information, there was no way for the court to know whether there was enough market-wide foreclosure to sustain a monopolization-via-exclusive dealing theory. *Dickson*, 309 F.3d at 209 ("[W]ith respect to the exclusive dealing component of Gravity's claim, absent an allegation regarding Compaq's or Dell's power or share in the PC market, there is no basis in Gravity's complaint for concluding that either of the two licensing agreements at issue . . . are likely to foreclose a significant share of the relevant software markets.").

Albemarle misleadingly relies on *Kolon Indus. I,* 637 F.3d 435 (4th Cir. 2011) for the idea that alleging "conditions of low supply and high barriers to entry in the market" is all that is

15

required to adequately plead market (and even monopoly) power. Opp. at 4 (citing *Kolon Indus. I*, 637 F.3d at 451). Albemarle even quotes *Kolon Indus. I* (in a parenthetical) for the concept that the district court "was correct" to assume that the plaintiff "adequately pled possession of monopoly power . . . given that [the plaintiff] pled, ***among other things*** that: numerous barriers to entry into the . . . market exist and supply is low." *Id.* (emphasis added). While Albemarle includes a period at the end of the quoted language, that is not where the Fourth Circuit ended the sentence. Albemarle conveniently omits the "other things" that the plaintiff pled in *Kolon Indus. I* that the Fourth Circuit listed as being important in reaching its conclusion that the plaintiff "adequately pled possession of monopoly power." The sentence continues after "supply is low;" with the following: "DuPont has long dominated the U.S. para-aramid fiber market; and DuPont currently controls over 70 percent of that market, i.e. that 'DuPont's market share remains greater than 70% of all sales by purchase volume of para-aramid fiber in the United States.'" *Kolon Indus. I*, 637 F.3d at 451 (quoting the complaint in that case).

Neither of Albemarle's out-of-circuit, non-motion to dismiss cases are any more helpful in plugging the Complaint's missing allegations of monopoly power. Instead, these authorities highlight the insufficiency of Albemarle' allegations. Far from finding that a company can be deemed to have monopoly power without finding that it has significant share of the market, *Microsoft* involved a well-defined market where the district court found Microsoft to have had "a greater than 95% share." *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001). ("[M]onopoly power may be inferred from a firm's possession of a dominant share of a relevant market that is protected by entry barriers."). In other words, in *Microsoft*, unlike here, the barriers to entry were coupled with large observed market shares.

16

And *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 500 (2nd Cir. 2004) went the opposite way on the key issue Albemarle cites it for.  While the court did say that monopoly power can be "proven directly through evidence of control over prices or the exclusion of competition," the court *rejected* the plaintiff's argument that monopoly power could be inferred through the alleged monopolist's pricing behavior and ultimately let the case proceed only based on the plaintiffs' evidence that the defendant had 100% market share in a well-defined antitrust market.  *See id.* at 500-02.

Albemarle suggests that "all that Albemarle and the Court have to go on at the pleading stage is Olin's actual behavior in the marketplace, which is more than sufficient to plausibly demonstrate Olin's monopoly power." Opp. at 5.  This ignores the fact that the Complaint makes clear that "Olin's actual behavior in the marketplace" led to Albemarle taking its business to someone else on terms apparently more attractive than Olin was willing to offer.  That is completely inconsistent with Olin having monopoly power.  Albemarle has offered this Court no well-pleaded facts that, if true, would plausibly allege that Olin has monopoly power in Albemarle's defined market.

## **CONCLUSION**

For the reasons stated herein, Olin asks that the Court dismiss Albemarle's Complaint in its entirety. Because the content of Albemarle's Complaint and Albemarle's misguided attempt to amend the Complaint in its Opposition make plain that Albemarle cannot make out a Section 2 case against Olin (at least not without running afoul of Federal of Civil Procedure Rule 11(b)), amendment would be futile, and Olin asks that the dismissal be with prejudice.

Dated: June 15, 2023                                         Respectfully submitted,

*/s/ Robert G. Lian Jr.*
Corey W. Roush (admitted *pro hac vice*)
Robert G. Lian Jr. (36406)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4115
croush@akingump.com
blian@akingump.com

*Counsel for Defendant Olin Corporation*