**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| ALBEMARLE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> OLIN CORPORATION, <br><br> Defendant. | Civil No. 1:23-cv-600 |

**MEMORANDUM OF LAW IN SUPPORT OF OLIN CORPORATION'S RULE 12(E) MOTION FOR A MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**

Over the course of briefing on Olin Corporation's ("Olin's") motion to dismiss, Albemarle Corporation ("Albemarle") revealed that its claims against Olin are based on conduct that is not mentioned in the Complaint and that the conduct that is pled in the Complaint and which Olin thought it was defending against constitutes "imaginary independent theories of liability." Given that Albemarle's motion to dismiss briefing both added to and is inconsistent with the Complaint and given that the Court denied Olin's motion to dismiss, Olin does not know how to frame its Answer consistent with its obligations under Rule 8 to admit and deny allegations in good faith.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(e), a party may move for "a more definite statement" when the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Flaum v. Gloucester Lanes, Inc.*, 299 F.R.D. 120, 122 (E.D. Va. 2014) (finding that a more definite statement was necessary for plaintiff to establish standing to bring his claims); *Hodgson v. Virginia Baptist Hosp., Inc.*, 482 F.2d 821, 823-24 (4th Cir. 1973); *see also Bad Co. Inc. v. Expeditors Int'l of Washington, Inc.*, No. 4:17CV1, 2017 WL 1969479, at *4 (E.D. Va. May 4, 2017) (granting the motion and directing Plaintiff to file a more definite statement explaining the factual and legal basis of Plaintiff's claims).

Under Rule 54(b), "any [interlocutory] order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A district court has "the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Among other grounds, a court should grant a motion for reconsideration to "prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–cv–00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v.*

*Staton*, 994 F.2d 1076,1081 (4th Cir. 1993)); *cf. also Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) (articulating the same standard under Rule 59(e)).

In this case, the remedy for granting a motion for a more definite statement or a motion for reconsideration would be essentially the same: an order directing Albemarle to file an amended complaint that more definitively, or adequately, outlines the legal theory of relief it is pursuing such that Olin is on notice of, and can defend, the claims against it.

## ARGUMENT

Albemarle filed its Complaint on May 3, 2023, before this Court, seeking damages and attorneys' fees, alleging that Olin has "monopolized," or attempted to monopolize the "North American railcar merchant market." Such a claim requires allegations of (1) monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power through the exclusion of competitive rivals. *See* Memo. In Support (Doc. 13) at 5 (collecting cases). In its subsequent motion to dismiss, Olin went through each of the three allegations in the Complaint that seemed to be Albemarle's claims of "exclusion" and explained how neither (1) the charging of monopoly prices, *see* Doc. 13 at 8-10 (citing Compl. ¶¶ 2, 5, 8, 66, 70, 74, 84, and 86), nor (2) Olin's refusal to provide pricing data to trade publications, *see* Doc. 13 at 10-12 (citing Compl. ¶¶ 54-61), constituted monopolistic exclusion; and it explained how (3) Albemarle had not adequately alleged the elements of a "sham litigation" claim, *see* Doc. 13 at 13-15 (citing Compl. ¶¶ 81-82).

In its brief opposing the motion to dismiss (hereinafter the "Opposition"), Albemarle called each of these theories "straw-m[e]n," and "imaginary independent theories of liability that are not actually presented in Albemarle's [C]omplaint." *See* Opposition (Doc. 16) at 10-12. Albemarle went on to explain that its case is about "exclusive dealing," challenging Olin's use of "exclusive supply contracts." *See* Doc. 16 at 8-10.

This was confusing because there are no exclusive contracts alleged or even mentioned in the Complaint. Instead, there are allegations of Olin charging monopoly pricing (Compl. ¶¶ 2, 5, 8, 66, 70, 74, 84, and 86), refusing to provide pricing data to trade publications (Compl. ¶¶ 54-61) and filing sham lawsuits (Compl. ¶¶ 81-82). While "exclusive" and "exclusionary" show up twenty-one times in Albemarle's Opposition (Doc. 16), there is not a single use of either word in Albemarle's Complaint. Nor is a single contract identified as "exclusive" in the Complaint. While the Complaint mentions "long-term supply contracts" several times, "long-term" and "exclusive" are obviously not the same thing. Thus, there is no paragraph Olin can either admit or deny in its upcoming Answer with regard to Olin's purportedly widespread use of "exclusive supply contracts"—which we know from Albemarle's Opposition is at the heart of its case.

Assuming that the alleged long-term supply contracts in the Complaint are the same as the exclusive contracts alleged in Albemarle's Opposition would not only be inappropriate; it would be inconsistent with what is actually alleged in the Complaint. Indeed, the Complaint makes clear that Olin is Albemarle's "primary provider of chlorine," id. ¶ 5, and "primary chlorine supplier," id. ¶ 86, *not its exclusive supplier*. In other words, the Complaint alleges facts suggesting that the long-term supply contract between Albemarle and Olin is not exclusive. And because there is no mention of whether the contract between Albemarle and Olin is exclusive, Olin can neither admit nor deny that fact, which appears to also be fundamental to Albemarle's case.

When the Court cancelled the requested hearing on Olin's motion and denied Olin's motion without a written opinion, *see* Doc. 19, it left Olin in a position of not knowing whether the Court believes (a) that the allegations in the Complaint were sufficient and what Olin is defending against or (b) that the newly asserted claims in Albemarle's Opposition are now part of the case. This has created manifest ambiguity in the Complaint that prevents Olin from being able to provide a

responsible Answer such that Olin does not know how it is supposed to respond to several allegations in the Complaint. That confusion can be illustrated in at least three ways.

First, in denying Olin's motion to dismiss, the Court has necessarily concluded that Albemarle has alleged that Olin engaged in "exclusionary conduct," viz., conduct that "exclude[s] rivals on some basis other than efficiency." *See* Doc. 13 at 6 (quoting *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992) and collecting cases). In persuading this Court to deny Olin's motion to dismiss, Albemarle relied in its Opposition exclusively on a theory that Olin engaged in monopolization by the use of "exclusive dealing arrangements" or "exclusive supply contracts," *see* Doc. 16 at 8-10, and is thus presumably now estopped from arguing that there was some *other* source of exclusionary conduct stated in its Complaint. *See generally United States v. Velasquez*, 52 F.4th 133, 141 (4th Cir. 2022) (courts look "to several factors to determine if estoppel is appropriate, including: (1) the inconsistency between the defendant's position before the district court and on appeal; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.") (internal quotation marks omitted) (citing *Zedner v. United States*, 547 U.S. 489, 504 (2006)); *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) (estoppel applies "where the party to be estopped . . . has taken a later position that is clearly inconsistent with her earlier one; has persuaded a court to adopt the earlier position, . . . and would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.").

This puts Olin in an untenable situation as it prepares its Answer; it could literally admit to all of the facts in the Complaint and still not be addressing whether it participates in exclusive

contracts.  As mentioned above, there are no exclusive contracts identified in the Complaint—not one.  The words "exclude," "exclusive," or "exclusion" appear nowhere in the Complaint, nor is the concept described in any other words.  There are, however, references to long-term supply agreements that are common "[w]ithin the merchant chlorine market (both pipeline and railcar)," Compl. ¶¶ 63-64; Olin's long-terms supply agreement with Albemarle to which Albemarle wants Olin to continue to be bound, *id.* ¶ 66; and legacy contracts that are coming to an end, *id.* ¶ 76.  The conundrum Olin finds itself in is that none of these can sensibly be interpreted as the exclusionary monopolistic contracts discussed in Albemarle's Response.  The long-term supply agreements referenced as being common throughout the merchant chlorine market are not specific to Olin and logically cannot be extrapolated to be just about Olin.  The contract Albemarle has with Olin and to which Albemarle wishes Olin would continue to be bound cannot serve as the basis for Albemarle's claim against Olin, and the legacy contracts that are coming to an end cannot be the basis on which Olin is maintaining its purported monopoly.  How can Olin reasonably defend itself against and prepare for discovery related to allegations of exclusive dealing if the Complaint does not identify which agreements Albemarle is seeking to challenge?  For instance, if the allegation is that Albemarle and Olin entered into a "long-term supply contract," the proper response in Olin's Answer may be one thing—but if the Court and Albemarle understand "long-term supply contract" to mean "long-term *exclusive* agreement that harmed competition," the answer may well be exactly the opposite.

A second area where the ambiguity and confusion of the situation makes responding to the Complaint problematic relates to the alleged antitrust market, namely "the North American railcar merchant chlorine market."  *See* Compl. ¶ 1.  This alleged market comprises less than 6.5% of the

5

chlorine produced in North America. *See* Doc. 13 at 19.[1] By denying Olin's motion to dismiss, this Court necessarily found that Albemarle alleged that Olin "possesses monopoly power" in "the North American railcar merchant chlorine market." In the absence of a written opinion, Olin once again turns to Albemarle's Opposition. In support of its contention that it *did* adequately allege monopoly power, Albemarle pointed to allegations in the Complaint that relate to other, broader markets such as the merchant chlorine market and the chlorine market generally. *See* Doc. 16 (citing Compl. ¶¶ 6, 30, 33, 35, 38, 40, 75-77, 79, and 80 of the Complaint). None of the cited paragraphs in the Complaint related to "the North American railcar merchant chlorine market." As a result, when Olin is faced with responding to these allegations, Olin is now forced to "guess" as to whether the cited paragraphs from Albemarle's Complaint should be read to be referring to *its* alleged market as per its Opposition or about merchant chlorine or chlorine more broadly (as a plain reading of the Complaint suggests). Since Albemarle's alleged market comprises only 6.5% of all chlorine produced in the United States, those allegations would be quite different, depending on how they are understood. A simple and straightforward fix is to require Albemarle to make a more definite statement in its Complaint as to which factual allegations are specific to its alleged market.

A third area where what is in the Complaint is made vague by Albemarle's Opposition and this Court's subsequent ruling denying Olin's motion to dismiss is antitrust injury. In denying Olin's motion to dismiss, the Court necessarily held that Albemarle alleged *antitrust* injury—as distinguished from, e.g., contract injuries. For there to be an *antitrust* injury, Olin must have excluded would-be North American railcar merchant chlorine producers that would have supplied

---

[1] Albemarle did not dispute this characterization in its Opposition.

Albemarle with railcar merchant chlorine at prices lower than what Albemarle was otherwise able to obtain. *See* Doc. 13 at 15-18 (collecting cases); Doc. 11-12. Albemarle's response brief pointed to four paragraphs in its Complaint in support of its contention that it alleged *antitrust* injury. *See* Doc. 16 at 6 (citing Compl. ¶¶ 70, 83, 84, 86). None of those paragraphs allege that *any* competitors were excluded from *any* market, much less the alleged North American railcar merchant chlorine market. None allege that there are (or are not) competitors that would have supplied Albemarle with prices lower than it was otherwise able to obtain. Each paragraph alleges that Olin refused to supply Albemarle with chlorine at the prices in the contract between Olin and Albemarle.

If these allegations simply mean that Olin would not provide Albemarle with chlorine at the contracted price, that is one allegation. But if what these allegations mean is that Albemarle had to pay anticompetitively high prices in its contract with Olin and that Olin was trying to <u>exclude other equally or more efficient competitors</u> by refusing to supply at those prices, that is another allegation entirely. And Olin would not answer them the same way. Juxtaposing Albemarle's Complaint with its briefing and this Court's ruling, Olin is not in a position to admit or deny the alleged facts because it no longer knows what they are. Once again, this confusion can be remedied by ordering Albemarle to provide a more definite statement explaining the exclusion it is alleging caused which its injuries and how, so Olin can admit or deny those allegations.

Because there is a disconnect between how the Complaint is written and how Albemarle re-characterized its Complaint in its Opposition, an order for a more definite statement would be appropriate. *See Parker v. Fed. Exp. Corp.*, No. 09-15063, 2010 WL 2510984, at *3 (E.D. Mich. June 17, 2010) (granting motion for a more definite statement where the plaintiff failed to identify

what implied contract it was suing on); *Broussard v. Go-Devil Mfg. Co. of La.*, No. CIV.A. 08-124-JJB-CN, 2008 WL 2414845, at *1 (M.D. La. June 13, 2008) (granting motion for a more definite statement where the plaintiff's complaint listed several patents but did not identify which patents it was suing on); *cf. Exal Corp. v. Roeslein & Assocs., Inc.*, No. 4:12-CV-01830, 2012 WL 4754748, at *4 (N.D. Ohio Oct. 2, 2012) (granting motion for a more definite statement where plaintiffs fraud allegations were unclear "as to the time, place and content of the alleged misrepresentation on which he or she relied, the identity of those who made the misrepresentations, the fraudulent intent of the defendants and the injury resulting from the fraud").

In the alternative, as the Court takes another look at Albemarle's allegations and sees the confusing position that Olin finds itself in—wanting to deny the allegations that the Court found to exist, but not finding them in the Complaint—Olin would also ask the Court, under Rule 54(b), to reconsider its order denying its motion to dismiss. A district court has "the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Among other grounds, it is appropriate for a court to grant a motion for reconsideration to "prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–cv–00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)); *cf. also Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) (articulating the same standard under Rule 59(e)).

The Supreme Court in *Twombly* explained the manifest injustice of letting "anemic" antitrust cases to proceed to discovery:

> [I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago in *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, "a district court must retain the power to insist upon some

8

> specificity in pleading before allowing a potentially massive factual controversy to proceed." . . . It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. And it is self-evident that the problem of discovery abuse cannot be solved by "careful scrutiny of evidence at the summary judgment stage," much less "lucid instructions to juries,"; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–60, 127 S. Ct. 1955, 1966–67, 167 L. Ed. 2d 929 (2007) (citations omitted). The reason Olin is in such a confusing position in preparing its Answer and defense is because the Complaint does not allege the details that Albemarle made clear in its response are underpinning its claims.

Whether by reconsidering its order on the Motion to Dismiss, or by ordering a More Definite Statement, the proper remedy is to order Albemarle to prepare a complaint that puts Olin on notice of the claims against it.

9

## **CONCLUSION**

For the reasons stated herein, Olin respectfully asks that the Court order Albemarle to prepare an amended complaint that provides a more definite statement. In the alternative, Olin asks that the Court reconsider its Order denying Olin's motion to dismiss and dismiss Albemarle's complaint without prejudice, in either case allowing Albemarle to file an amended complaint that comports with its legal theory of relief.

Dated: July 11, 2023              Respectfully submitted,

/s/ *Robert G. Lian*
Corey W. Roush (*pro hac vice*)
Robert G. Lian (36406)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4115
croush@akingump.com
blian@akingump.com

*Counsel for Defendant Olin Corporation*