IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALBEMARLE CORPORATION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:23-cv-600 |
| OLIN CORPORATION, | : |
| Defendant. | : |

**[PROPOSED] ORDER GOVERNING PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

Upon consideration of the parties' Joint Motion for Order Governing Production of Electronically Stored Information ("ESI"), it is hereby ORDERED as follows.

1. <u>Purpose</u>: This Order is intended to streamline ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. <u>ESI Sources, Custodians, and Search Terms</u>: After reviewing applicable requests for production of documents, the parties shall meet and confer regarding the custodians from whom the producing party proposes to collect ESI and the producing party's general search methodology, including questions about the relevant sources of ESI and the words, terms, phrases, and date ranges to be searched, if applicable. If, after review of the produced ESI commences, a receiving party believes that additional sources, custodians, or search terms are necessary or that changes to the search terms or method of searching are warranted, the receiving party shall promptly identify proposed additional custodians or search terms or different method

of searching, and the parties shall then promptly meet and confer in good faith about the issues raised. Any objections or proposed changes to the search methodology shall be supported by specifically articulated grounds.

3. <u>Documents Protected from Discovery</u>: The parties shall meet and confer about the format, content, and timing of production of privilege logs. The inadvertent production of privileged or otherwise protected ESI shall be governed by the Protective Order in this matter. Pursuant to Federal Rule of Evidence 502(d) and (e), the inadvertent production of privileged or work-product-protected ESI is not a waiver in this action or in any other proceeding. The mere production of ESI in litigation as part of a mass production will not in itself constitute a waiver for any purpose. The receiving party may not use ESI, beyond what is allowed by Rule 26 of the Federal Rules of Civil Procedure, that the producing party asserts is attorney-client privileged or work-product-protected to challenge the asserted privilege or protection.

4. <u>Limitations and No Waiver</u>: This Order provides a general framework for the production of ESI on a going-forward basis. By jointly moving for the entry of this Order the parties and their counsel do not intend, and this Order should not be interpreted, to waive attorney work-product protection. Any such waiver shall be strictly and narrowly construed and shall not extend to other matters or to information not specifically described herein. All parties preserve their attorney-client and other privileges, and nothing in this Order shall be construed to waive or weaken those privileges. All documents produced hereunder are fully protected and covered by the Protective Order in this matter, including the provisions of the Protective Order entered pursuant to Federal Rule of Evidence 502(d) and (e).

5. <u>Production Media</u>. Unless otherwise agreed by the parties, the producing party shall provide ESI production data on external hard drives or using an electronic data transfer

such as FileZilla or an FTP with contents in rar or zip files. The producing party may encrypt the production data using a generally accepted encryption method.

    6.    Production Format. ESI shall be produced as follows:

        a.    Documents existing in electronic format: Except as otherwise provided for in this Order, where technically feasible, all documents existing in electronic format shall be produced in single-page, Group IV tagged image file format (TIFF) at a resolution of at least 300 dpi in accordance with the following:

            i.    When producing documents in TIFF format, the Image file shall be produced along with an Opticon image cross-reference load file linking the images to the corresponding document that indicates the beginning and ending of each document. Each image file shall be named according to the unique corresponding Bates number associated with the document. Each image file shall be branded according to the Bates number and confidentiality designation, if any, as authorized by the Protective Order in this matter. Image files shall show all text and images that would be visible in the original electronic format (native format). When it is impracticable for an electronic document to be produced in this manner, including because any information contained in the document would be omitted, distorted, reorganized, or otherwise made more difficult to read or understand than the document's native format, a party may produce the document in its native

        format and/or meet and confer regarding an alternative production format that is technically feasible.

  ii.    Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt) containing a field with the full path and filename to files produced in native format and also containing metadata fields identified in Exhibit A, if the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor generated fields related to the litigation production, such as "BegDoc," "EndDoc," bases for redaction, and confidentiality designations).

  iii.    Notwithstanding the foregoing, all documents that the producing party received from a third party or reproduces in whole or in part from the production files of a historical litigation or government investigation or inquiry should be produced in the same manner and form as the producing party received those documents from the third party or originally produced those documents in the relevant historical litigation or investigation; except that the producing party may add or change Bates numbers and confidentiality designations as appropriate.

  iv.    Extracted text, to the extent it exists, shall be provided in page- or document-level text files, unless the document has been redacted.

    v.  The parties shall produce e-mail attachments sequentially after the parent e-mail. The parties shall not use e-mail thread suppression in the production of documents. If any part of an e-mail or its attachments is responsive, the entire e-mail and all attachments will be produced, except any e-mails or attachments that may be withheld or redacted on the basis of privilege or work production protection. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. Each document shall be produced with the Bates number for the first and last page of that document in the "BegDoc" and "EndDoc" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the Bates number for the first and last page in the document family.

    vi.  The parties shall consider in good faith reasonable and specific requests for production of a document that is hyperlinked within a produced document, if not initially produced.

  b. <u>Hard copy or paper documents</u>: All documents that are hard copy or paper files shall be scanned and produced in the same manner as documents existing in electronic format in accordance with the following. In scanning hard copy documents, distinct documents shall not be merged into a single document or file, and single documents shall not be split into multiple records (*i.e.*, hardcopy documents shall be logically unitized). The parties shall use reasonable efforts to unitize documents correctly. Multipage

        OCR text for each document may be provided, if available and if the producing party has applied OCR to the document for its own use. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" shall be turned on during the OCR process.

c. <u>Native files</u>: The parties shall produce PowerPoint or other presentation files, audio and video files, and Microsoft Excel or other spreadsheet files in native format to the extent native format documents are available, endorsed with a unique Bates number and confidentiality designation reflected in the file name or accompanying slip sheet. The parties shall consider in good faith reasonable and specific requests for the production of other files or file types in native format where appropriate. A party shall not make unduly burdensome and unreasonable requests for the production of other documents in native format, and a party shall not unreasonably refuse a request for the production of other documents in native format.

d. <u>Redacted documents</u>: For documents that are properly subject to redaction under the Protective Order in this matter, a party shall produce a redacted version of any such document along with any agreed-upon non-privileged metadata associated with such document, and any redacted document will include either OCR or extracted text if the document was searchable before it was redacted. If a document was collected in hard copy, and the producing party has not applied OCR to the document for its own use, the producing party is not obligated to apply OCR to the redacted document

6

      for production. Redacted documents otherwise required by this Order to be produced in native format shall be produced in tiff format unless doing so renders the document not reasonably usable.

e. <u>Requests for high resolution or color documents</u>: The parties shall consider in good faith reasonable and specific requests for the production of higher resolution or color images. Parties are not under an obligation to produce color images. Parties may, however, request that specific documents be produced in color. Nothing in this Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing, or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document.

f. <u>Images with poor legibility</u>: If a document is originally produced in an illegible or difficult-to-read form, the receiving party shall have the option to request a native-file version of the document or a replacement image of legible quality.

g. <u>Databases</u>: To the extent a party's response to a document request requires production of ESI contained in a database, the producing party may produce reports from the database in lieu of producing the database as a whole, so long as it clearly communicates to the receiving party, in a cover page or otherwise, that the reports were created from an unproduced database. Before producing the reports, the producing party may meet and

          confer with the receiving party regarding the format for production. The receiving party may request additional reports, production of additional data from the database, or information concerning the database. The parties shall meet and confer in good faith to discuss any such requests.

    h.    <u>Materials requiring different production format</u>: If particular documents or materials reasonably require a different format than is described in this Order, the parties shall meet and confer to arrange for the mutually acceptable production of those documents. The searchability of documents shall not be degraded as part of the document production process.

7.    <u>Custodians</u>: Regardless of the format of the documents, the parties shall identify each individual from whose files documents are produced if the custodian of such files is recorded in the metadata for the document or if the identity of the custodian is otherwise reasonably available to the producing party. To the extent documents are produced from a nonindividual, or centralized, source, that source must be identified, if available.

8.    <u>Metadata</u>: Document image load files shall include, where applicable and to the extent reasonably feasible, the data in the metadata fields identified in Exhibit A attached hereto. The parties are not obligated to produce, and no party is entitled to request, metadata for any document that does not contain such metadata in its native version at the time of collection.

9.    <u>Deduplication</u>: Each party shall make a good faith effort to remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level, including but not limited to e-mail, to reduce the unnecessary cost of producing and reviewing exact duplicate documents. Attachments shall not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the

BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Data shall be de-duplicated on a global level. Names of custodians eliminated due to global deduplication shall be provided in the CUSTODIANALL metadata field. Removal of near-duplicate documents and e-mail thread suppression are not acceptable.

10. <u>Culling and Filtering</u>: Each party shall use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extensions may include, but is not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. The parties shall meet and confer as needed concerning which file types may be appropriate to cull or filter in an effort to preserve files relevant to this litigation.

11. <u>Best Efforts Compliance and Disputes</u>: The parties shall use their best efforts to comply with, and to resolve any differences concerning compliance with, any provisions of this Order. If a producing party cannot comply with a provision of this Order in a particular circumstance, that party shall promptly inform the receiving party in writing why compliance with the particular provision is not reasonable or feasible. No party may seek relief from the

Court concerning compliance or non-compliance with this Order until it has met and conferred with the other party in a good-faith effort to resolve or narrow the area of disagreement.

      12.    <u>Modification</u>: This Order may be modified by order of the Court or by written agreement of the parties for good cause, subject to the Court's approval.

                                                       _____

Alexandria, Virginia
_____, 2023

**EXHIBIT A TO ORDER GOVERNING PRODUCTION OF ESI: METADATA FIELDS**[1]

| Field Name | Example / Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Bates number or unique identifier associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Bates number or unique identifier associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Bates number or unique identifier associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Bates number or unique identifier associated with the last page of the last attachment. |
| **RECORDTYPE** | Options: eMail, Attachment, eDoc, Hard Copy/Paper | The record type of a document, if available in the document's metadata. |
| **SENTDATE** | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| **SENTTIME** | HH:MM | The time the e-mail or calendar entry was sent, if available in the document's metadata. |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the document was received. |
| **RECEIVEDTIME** | HH:MM | The time the document was received, if available in the document's metadata. |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. |
| **CREATETIME** | HH:MM | The time the document was created, if available in the document's metadata. |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified or saved. |
| **LASTMODTIME** | HH:MM | The time the document was last modified or saved, if available in the document's metadata. |
| **MEETING START DATE** | MM/DD/YYYY | Start date of calendar entry. |
| **MEETING START TIME** | HH:MM | Start time of calendar entry, if available in the document's metadata. |

| **MEETING END DATE** | MM/DD/YYYY | End date of calendar entry. |
|---|---|---|
| **MEETING END TIME** | HH:MM | End time of calendar entry, if available in the document's metadata. |
| **FILEPATH** | /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files. |
| **AUTHOR** | jsmith | The author of a document from extracted metadata. |
| **LASTEDITEDBY** | jsmith | The name of the last person to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and e-mail address (if available in the metadata of the document) of the author of an e-mail/calendar item. An e-mail address should always be provided if available in the metadata of the document. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address (if available in the metadata of the document) of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed and if the e-mail address is available in the metadata of the document. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address (if available in the metadata of the document) of the copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a copyee existed if the e-mail address is available in the metadata of the document. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address (if available in the metadata of the document) of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed and if the e-mail address is available in the metadata of the document. |
| **SUBJECT** | | The subject line of the e-mail/calendar item. |
| **MESSAGE TYPE** | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type, if available in the document's metadata. |
| **IMPORTANCE** | Normal, Low, High | E-mail Importance Flag |
| **TITLE** | | The extracted document title of a document. |

| | | |
|---|---|---|
| **CUSTODIAN-ALL** | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| **ATTACH COUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **HASH** | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together e-mail threads, if available in the document's metadata. |
| **REDACTED** | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| **CONFIDENTIALITY** | CONFIDENTIAL or Blank | The confidentiality designation of a document. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in, if available. Producing Parties will make good faith efforts to either populate this field or indicate the applicable time zone on the face of the document. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | If a document is produced in native format, this field will contain the full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, or if the document has been redacted, then, OCR for the document may be provided. |

[1] If a producing party intends to produce any documents that do not readily conform to the metadata listed here, the parties will meet and confer as to the appropriate metadata fields to be produced.