**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

ALBEMARLE CORPORATION,

       Plaintiff,

    v.

OLIN CORPORATION,

       Defendant.

Civil No. 1:23-cv-600

**<u>REBUTTAL BRIEF IN SUPPORT OF OLIN CORPORATION'S MOTION FOR A
MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE, FOR
RECONSIDERATION</u>**

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ **1**

**ARGUMENT** ...................................................................................................................... **1**

    **I.**      **Albemarle's Opposition ignores the difference between "exclusive contracts" and other types of contracts and makes clear why Olin cannot fairly answer Albemarle's Complaint.** ................................................................1

    **II.**     **Because the fundamental change in Albemarle's case occurred in the briefing related to Olin's 12(b)(6) motion, the objection of needing a more definite statement was not available to Olin when it filed its 12(b)(6) motion.** ..............5

    **III.**    **Albemarle did not respond to Olin's arguments that the Complaint is unintelligibly ambiguous with regard to monopoly power in Albemarle's alleged antitrust market or Albemarle's alleged antitrust injury.** ....................6

**CONCLUSION** ................................................................................................................... **7**

## INTRODUCTION

Olin Corporation's ("Olin") motion for a more definite statement or, in the alternative, for reconsideration (the "Motion") seeks to remedy Olin's present inability to appropriately answer the Complaint due to the changes in the legal theory set forth by Albemarle Corporation ("Albemarle") over the course of its motion to dismiss briefing.  Fundamentally, Olin cannot deny the allegations made by Albemarle relating to its "exclusive dealing" theory of law because those allegations are not in the Complaint.  Albemarle's opposition to the Motion ("Opposition") fails to address or recognize the import of Albemarle's substantive edits and the resulting inability of Olin to provide a meaningful Answer to Albemarle's Complaint as currently written.  In addition, because these changes first surfaced in Albemarle's opposition to the motion to dismiss, Olin was not aware of the changes when it filed its motion to dismiss, meaning that the objection that the Complaint needs to be more clear was not "available at the time" Olin filed its original 12(b)(6) motion.

## ARGUMENT

I.     **Albemarle's Opposition ignores the difference between "exclusive contracts" and other types of contracts and makes clear why Olin cannot fairly answer Albemarle's Complaint.**

In its rebuttal brief in support of the motion to dismiss, Olin discussed the ambiguity resulting from Albemarle's explanation in its opposition to the motion to dismiss that the theories explicitly laid out in the Complaint were red herrings and that Albemarle actually intended to bring an exclusive dealing case.  (*See* Doc. 16 at 5-8).  Comparing the allegations in the Complaint with those made in Albemarle's opposition to the motion to dismiss and now further clarified in Albemarle's opposition to the motion for a more definite statement reveals that the allegations relating to exclusive dealing that Olin needs to address (and should have the opportunity to deny) are absent from the Complaint.

1

To begin, ***there is a difference between a sales contract and an exclusive sales contract***. Calling an exclusive sales contract a "sales contract" is decidedly vague if the point of mentioning the contract is to assert that its exclusive nature is a violation of the antitrust laws.  Olin is not now arguing, nor has it ever argued, that Albemarle failed to allege that Olin enters into contracts and sometimes sells chlorine via contracts.  Rather, nothing in the Complaint says that the contracts are exclusive or that the exclusivity is a violation of the antitrust laws.  Albemarle's briefing since the Complaint has not made clear where its allegations of ***exclusive contracting*** are, and Olin does not know how to respond to the allegations of the Complaint that discuss contracts or sales but do not allege that they were "exclusive."

Black's Law Dictionary defines an "exclusive-dealing arrangement"—also referred to as an "exclusive contract"—as an "agreement requiring a buyer to purchase *all* needed goods or services from one seller."  Black's Law Dictionary (11th ed. 2019) (emphasis added).  In its recent Request for Production, Albemarle provided a similar definition: "For purposes of this request, an 'exclusive' agreement is one that requires the buyer to purchase substantially all of its chlorine requirements from the seller or that prohibits the buyer from purchasing chorine from another seller without the contracting seller's permission."  *See* Exh. 1 (Albemarle's RFP to Olin) at 11. Despite clearly knowing how it would define an exclusive contract, Albemarle does not describe an exclusive contract in its Complaint.

Nonetheless, Albemarle asserts in its Opposition that there are several references in the Complaint to exclusive contracts (even if none "mechanically recite the word 'exclusive' in connection with every mention of supply contracts").  (Doc. 23 at 5)  Looking at each of the three references to the Complaint that Albemarle asserts in its Opposition that Olin should have

2

understood (and should understand) relate to anticompetitive exclusivity makes clear why Albemarle needs to re-draft the Complaint to add clarity.

**First,** Albemarle's Opposition points to Paragraph 66 of the Complaint, which states that "Albemarle was obligated to buy all of its chlorine requirements from Olin," in support of its argument that the Complaint references exclusive contracts by which Olin constrained supply and raised prices in the relevant market. (Doc. 23 at 5).[1]  But Albemarle ignores what it says in the Complaint just a couple paragraphs later about that same contract: "The chlorine price terms in the Contract were freely negotiated by the parties [and] *represented a fair market price* . . . .  But ***the Contract pricing was not consistent with the monopolistic pricing strategy Olin had adopted*** . . . .  Olin therefore ***began to undermine the Contract by engaging in predatory, anticompetitive conduct directed at Albemarle*.**"  (Doc. 1, ¶¶ 68, 69.)  Olin is left wondering how to Answer a complaint where one of the purported anticompetitive exclusive contracts that Albemarle references in its Opposition is alleged in the Complaint as having been "undermine[d]" by some other "predatory, anticompetitive conduct" by Olin.

**Second,** Albemarle points to its allegation in the Complaint that Olin "entered into new supply contracts that 'baked in or locked in a lift in chlorine prices for this year over last year of at least $100 million.'"  (Doc. 23 at 5) (partially quoting Doc. 1 ¶ 76).  Looking at Paragraph 76 of the Complaint, Albemarle is wrong to say that the Paragraph says anything about Olin entering into exclusive supply contracts.  Indeed, the sentence Albemarle partially quotes in the Opposition says nothing about contracts; it reads in total: "The same executive noted that Olin had 'baked in

---

[1] Albemarle does not mention paragraphs 5 and 86, which allege that Olin was Albemarle's "primary provider of chlorine" and "primary chlorine supplier," never Albemarle's exclusive supplier.  (Doc. 1 ¶¶ 5, 86.) (emphasis added.)

or locked in a lift in chlorine prices for this year over last year of at least $100 million.'" (Doc. 1, ¶ 76.) And the first sentence of that same paragraph in the Complaint references Olin's "efforts to 'open up' legacy supply contracts." (*Id.*). These Complaint allegations say **nothing at all about exclusive contracts**; instead, they suggest Olin was trying to get out of its contracts (exclusive or otherwise) to sell chlorine at higher prices. Again, Olin is left wondering how to answer a complaint that literally does not say what Albemarle is saying it says. If Olin admits that the language Albemarle quotes in the Complaint as having been said by an executive is accurate, is Olin somehow admitting that it also entered into exclusionary, exclusive new supply contracts as Albemarle now suggests in its Opposition?

**Third,** Albemarle argues that it plead in the Complaint that "'almost all available production' of chlorine 'is pre-committed to buyers under long-term supply contracts.'" (Doc. 23 at 5) (quoting Doc. 1 ¶ 28). Again, "long-term" does not mean "exclusive." Indeed, the rest of the same paragraph suggests that the long-term contracts are not exclusive as it explains that "a buyer with an unforeseen or unplanned need for chlorine will find it difficult or impossible to obtain supply." (Doc. 1 ¶ 28). If buyers are looking to buy chlorine outside of their long-term contracts, that would clearly mean that the long-term contracts are not exclusive. Once more, if Olin were to admit the first sentence in Paragraph 28, which merely says that "almost all available production is pre-committed to buyers under long-term contract," is Olin admitting that the vaguely described "long-term" contracts are exclusive?

Ultimately, the dissonance between the allegations in the Complaint and the arguments put forth by Albemarle in its oppositions (both to the motion to dismiss and the motion for a more definite statement) undermines Olin's ability to deny the allegation that Olin entered into anticompetitive exclusive dealing contracts. It also undermines Olin's ability to determine when

an admission to something in the Complaint may be interpreted by Albemarle and this Court as meaning more than it would if the Complaint were taken on its face.

II.  **Because the fundamental change in Albemarle's case occurred in the briefing related to Olin's 12(b)(6) motion, the objection of needing a more definite statement was not available to Olin when it filed its 12(b)(6) motion.**

In its opposition to the Motion, Albemarle argues that Olin should have requested a more definite statement at the time Olin filed its original 12(b)(6) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(g)(2).  (*See* Doc. 23 at 2-4.)  Rule 12(g)(2) states, however, that "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection *that was available to the party* but omitted from its earlier motion."  Fed. R. Civ. P. 12 (emphasis added).  In other words, a second Rule 12 motion is appropriate where there is a change in events or circumstances that presents a different, previously unavailable, objection to the moving party.

Simply put, the allegations concerning the "exclusive dealing" theory of law at issue in Albemarle's opposition to the motion to dismiss could not have been addressed by Olin in its initial Rule 12(b)(6) motion to dismiss because those allegations are *not in the Complaint*.  As pointed out by Olin, and acknowledged by Albemarle itself, the Complaint does not include the words "exclude," "exclusive," or "exclusion."  (*See* Doc. 18 at 7, Doc. 21 at 5, Doc. 23 at 5.)  Indeed, those words and the concept that Olin was defending itself in an exclusive dealing case did not surface until Albemarle filed its opposition to the motion to dismiss.  Albemarle attempts to downplay the significance of this—stating that it merely did not "mechanically recite the word

'exclusive' in connection with every mention of supply contracts" or use "certain magic words or formulas" (Doc. 23 at 5, 6)—the issue is not one of sporadic oversight.[2]

Moreover, because Albemarle included allegations regarding monopoly pricing, sham lawsuits, and changed price-reporting behavior in the Complaint (behavior Albemarle later described as "straw-m[e]n" and "not truly germane" to Albemarle's monopolization claims), *see* Doc. 16 at 10, Olin did not know it needed to ask for a more definite statement. Olin reasonably thought it was defending against the explicit allegations in the Complaint and did not learn until the motion to dismiss briefing that there were hidden allegations of exclusive dealing.

It would be unfair to find that Olin "waived" its right to ask for more clarity when it fully briefed a Rule 12(b)(6) motion addressing every theory of exclusion articulated in the Complaint. It would also be unfair to require Olin to answer the Complaint as it currently reads when there is no place in the Complaint where Olin can deny the new allegations added by both of Albemarle's opposition briefs. To that end, Albemarle remains unable to answer the basic question of what allegations in which paragraphs Olin could deny in order to defend itself against the claim of purported exclusive dealing. If the Court does not reconsider its ruling on the motion to dismiss, it should at least require Albemarle to formally amend its Complaint to conform with the back-door amendments it made through its reply briefs. This is fundamentally modest and consistent with due process.

**III.  Albemarle did not respond to Olin's arguments that the Complaint is unintelligibly ambiguous with regard to monopoly power in Albemarle's alleged antitrust market or Albemarle's alleged antitrust injury.**

---

[2]     Anticipating that the use of the word "exclusive" would occur in an "exclusive dealings" case is not the farfetched expectation that Albemarle suggests.

The ambiguity of Albemarle's allegations of exclusivity were not the only grounds presented in Olin's Motion. Olin also argued that Albemarle's Complaint is unintelligible insofar as it alleges a "North American railcar merchant chlorine market," which comprises only 6.5% of all chlorine produced in North America (according to the Complaint), but then exclusively makes factual allegations that relate to *other* markets, namely the market for North American chlorine and the market for North American merchant chlorine. *See* Doc. 21 at 5-6. Albemarle does not address this argument in its Opposition. And Olin is left wondering whether admitting allegations regarding these other markets will be taken by this Court and Albemarle to be admissions related to the market Olin supposedly monopolizes.

Olin presented yet a third area of vagueness in Albemarle's Complaint, namely that it does not make intelligible allegations as to Albemarle's *antitrust* injuries—as distinguished from Albemarle's *contract* injuries. *See* Doc. 21 at 6-7. Here, too, Albemarle has elected not to respond.

In both cases, Albemarle's lack of response reflects that there simply are not clear allegations as to which Olin may deny its purported monopoly power in the "North American railcar merchant chlorine market" or Albemarle's alleged "antitrust injury."

<u>**CONCLUSION**</u>

For the reasons stated herein, Olin respectfully requests an order directing Albemarle to file an amended complaint that outlines the legal theory it is pursuing such that Olin is on notice of, can respond to, and can eventually defend, the claims against it. In the alternative, Olin requests that the Court reconsider its Order denying Olin's motion to dismiss and dismiss Albemarle's complaint without prejudice, in either case allowing Albemarle to file an amended complaint that comports with its legal theory of relief.

Dated: July 27, 2023                    Respectfully submitted,


                                        */s/ Robert G. Lian Jr.*
                                        Corey W. Roush (admitted *pro hac vice*)
                                        Robert G. Lian Jr. (36406)
                                        AKIN GUMP STRAUSS HAUER & FELD
                                        LLP
                                        2001 K Street, N.W.
                                        Washington, DC 20006
                                        Tel: (202) 887-4115
                                        croush@akingump.com
                                        blian@akingump.com

                                        *Counsel for Defendant Olin Corporation*

8