# EXHIBIT 1

(Albemarle Corporation's First Set of Requests for Production of Documents to Defendant Olin Corporation, dated July 14, 2023)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALBEMARLE CORPORATION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:23-cv-600 |
| OLIN CORPORATION, | : |
| Defendant. | : |

**ALBEMARLE CORPORATION'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT OLIN CORPORATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable Local Rules for the United States District Court for the Eastern District of Virginia, Plaintiff Albemarle Corporation hereby requests that Defendant Olin Corporation respond to the following requests and produce responsive documents to the office of Briglia Hundley, PC, 1921 Gallows Road, Suite 750, Tysons Corner, VA 22182, in care of William T. DeVinney, and/or in electronic form in a manner agreed upon by counsel.

**INSTRUCTIONS**

1. Your responses to the requests and Your production of Documents shall be governed by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Eastern District of Virginia, and these Instructions and Definitions.

2. Reference to any Person other than a natural person also refers to and includes any present or former parent, subsidiary, affiliate, division, branch, predecessor, successor,

1

principal, member, director, officer, shareholder, manager, employee, attorney, or agent of such Person.

3. All Documents shall be identified by the request(s) to which they are primarily responsive or shall be produced as they are maintained in the ordinary course of business, in accordance with Federal Rule of Civil Procedure 34(b)(2)(E).

4. Produce all requested Documents in Your possession, custody, or control.

5. Unless otherwise indicated, the relevant time period covered by these requests is January 1, 2020 through the present, subject to Your continuing duty to supplement Your responses and document production under Federal Rule of Civil Procedure 26(e).

6. Produce the original or a duplicate, as those terms are defined in Rule 1001 of the Federal Rules of Evidence, of each requested Document, together with all non-identical copies and drafts of each requested Document.

7. Documents that are attached to each other should not be separated; Documents that are separate should not be attached to each other.

8. Each Document should include all exhibits, attachments, enclosures, or appendices.

9. If any Document is withheld from production in whole or in part based on a claim of attorney-client privilege, work product protection, or any other privilege or similar doctrine, serve a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5)(A) simultaneously with service of Your responses to these requests.

10. Documents should not contain redactions, other than redactions made to protect information subject to the attorney-client privilege or work product protection. In the event any Documents are produced with redactions, explain the redactions on Your privilege log.

11. To the extent a requested Document was at one time, but is no longer, in Your possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; and/or (iii) has been transferred to the possession, custody, or control of another Person.

12. Except as the parties may otherwise agree, with respect to electronic documents and consistent with Federal Rule of Civil Procedure 34(b)(2)(E), produce all electronic documents as follows:

- Single page Group IV TIFF image files not less than 300 dpi for all documents, including paper, except for Excel, PowerPoint, media, and any database files which will be produced in native format along with extracted text or OCR and review database load files (.dat and .opt) containing the following metadata fields:

  - Emails: BegDoc#; EndDoc#; PgCount; To; From; CC; BCC; Date Sent; Date Received; Time Sent; Email Subject; Filename; Custodian; Document Extension; EDFolder; Path; Application; Conversation; Conversation Index; MD5Hash; Other Custodian; BegAttach; EndAttach; ParentID; NativeFile; PGCount.

  - Other Electronic Documents: BegDoc#; EndDoc#; PgCount; Author; Filename; Path; Date Created; Date Last Modified; Document Title; Subject; Custodian; Document Extension; MD5Hash; NativeLink; PGCount.

The text files shall be named to match the endorsed number assigned to the image of the first page of the corresponding document. Any files produced in native format should be produced with a link in the NativeFile field along with all extracted text and metadata fields.

## DEFINITIONS

1. "Albemarle" means Albemarle Corporation and its present and former agents, employees, officers, and representatives.

2. The "Albemarle Contract" means the contract between Albemarle and Olin referenced in paragraph 66 of Albemarle's Complaint, including any amendments and extensions.

3. The conjunction "and" includes the disjunctive "or," and vice versa.

4. "Any" includes "all," and vice versa.

5. "Communication" means and includes any transmission or exchange of information in the form of facts, ideas, inquiries, or otherwise, whether orally or in writing, including without limitation any conversation or discussion face-to-face or by means of letter, note, memorandum, email, text message, instant message, telephone, or some other electronic or other medium.

6. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7. "Document" or "Documents" shall have the broadest meaning under the Federal Rules of Civil Procedure and includes but is not limited to ESI, writings, drawings, graphics, photographs, letters, correspondence, notes, statements, minutes of meetings, e-mails, text messages, instant messages, social media posts, telefaxes, reports, memoranda, announcements, agreements, contracts, manuals, drafts, circulars, pamphlets, books, summaries, data sheets, spreadsheets, audio or video recordings or files, as well as copies of any Documents by whatever means made. "Document" or "Documents" includes any Communication, whether within Olin or between Olin and another Person. "All Documents" means every Document, as defined above, whether an original or copy.

8. "Olin" or "You" or "Your" means Olin Corporation and its present and former agents, employees, officers, and representatives.

9. "Person" means any natural person or legal entity, including, without limitation, any business or governmental entity or unincorporated association.

**REQUESTS**

1. All Documents Concerning analyses, studies, surveys, or research Concerning the North American chlorine market.

RESPONSE:

2.      All Documents Concerning analyses, studies, surveys, or research concerning any segment or submarket within the North American chlorine market, including but not limited to (a) the merchant chlorine market and (b) the railcar merchant chlorine market.

RESPONSE:

3.      All Documents Concerning Olin's share of the North American chlorine market.

RESPONSE:

4.      All Documents Concerning Olin's share of any segment or submarket within the North American chlorine market, including but not limited to (a) the merchant chlorine market and (b) the railcar merchant chlorine market.

RESPONSE:

5.      Documents sufficient to show the volume of chlorine held in storage or inventory by Olin at all times since January 1, 2020, where "in storage or inventory" excludes chlorine in transit via pipeline or railcar.

RESPONSE:

6.      Documents sufficient to show the volume of chlorine sold in any spot market in North America on a monthly basis (or, if records of such activity are not kept on a monthly basis, on a quarterly basis).

RESPONSE:

7. All Documents Concerning any shift, by a buyer of chlorine from Olin, from delivery via pipeline to delivery via railcar.

RESPONSE:

8. All Documents Concerning any shift, by a buyer of chlorine from Olin, from delivery via railcar to delivery via pipeline.

RESPONSE:

9. All Documents Concerning Olin's chlorine pricing strategy in North America.

RESPONSE:

10. All Documents Concerning Olin's methods, policies, or procedures for setting chlorine prices in North America.

RESPONSE:

11. All Documents Concerning any factors used or taken into account by Olin in setting chlorine prices in North America.

RESPONSE:

12. All Documents Concerning the available supply of chlorine in North America.

RESPONSE:

13. All Documents Concerning analyses, studies, projections, or research Concerning actual, projected, or potential changes in the available supply of chlorine in North America.

RESPONSE:

14. All Documents Concerning Olin's ability to affect, influence, or control the available supply of chlorine in North America or in any segment or submarket of the North American chlorine market.

RESPONSE:

15. All Documents Concerning analyses, studies, projections, or research Concerning the effect of Olin's conduct on the available supply of chlorine in North America or in any segment or submarket of the North American chlorine market.

RESPONSE:

16. All Documents Concerning Olin's ability to affect, influence, or control the price of chlorine in North America or in any segment or submarket of the North American chlorine market.

RESPONSE:

17. All Documents Concerning analyses, studies, projections, or research Concerning the effect of Olin's conduct on the price of chlorine in North America or in any segment or submarket of the North American chlorine market.

RESPONSE:

18. All Documents Concerning Olin's "leading phase" as described by Scott Sutton during Olin's November 5, 2020 earnings call.

RESPONSE:

19. All Documents Concerning any planned reduction by Olin in its capacity to produce chlorine for the North American market or for any segment or submarket of the North American market, including but not limited to any chlorine production facility closure described in Albemarle's Complaint.

RESPONSE:

20. All Documents Concerning the reasons or bases for, or the considerations underlying, Olin's plans or decisions Concerning chlorine production rates or operating rates at any of its facilities producing chlorine for the North American market.

RESPONSE:

21. All Documents Concerning any *force majeure* declaration by Olin that affected Olin's production of chlorine for the North American market or the availability of chlorine supply for any Olin customer in North America.

RESPONSE:

22. All Documents Concerning any plan, proposal, or decision to resume or not to resume chlorine production, in whole or in part, at any Olin facility following a *force majeure* declaration affecting that facility.

RESPONSE:

23. All Documents Concerning the reasons or bases for, or the considerations underlying, the duration of any *force majeure* declaration by Olin that affected chlorine production for the North American market

RESPONSE:

24. All Documents Concerning any analyses, studies, projections, or research Concerning any other chlorine producer's actual or potential changes in chlorine production, market share, or pricing in response to Olin's chlorine production or pricing decisions in North America.

RESPONSE:

25. All Documents Concerning Scott Sutton's statement during Olin's July 28, 2021 earnings call that Olin had "identified elemental chlorine as the #1 driver of this company's overall value evolution."

RESPONSE:

26. All Documents Concerning Olin's membership or participation in the Chlorine Institute, including but not limited to Documents Concerning any decision by Olin to terminate or withdraw from such membership or participation.

RESPONSE:

27. All Documents Concerning Olin's membership or participation in the American Chemistry Council, including but not limited to Documents Concerning any decision by Olin to terminate or withdraw from such membership or participation.

RESPONSE:

28. All Documents Concerning any plan, proposal, or decision by Olin to stop reporting information about its chlorine production levels to the Chlorine Institute, the American Chemistry Council, or any other Person to whom Olin previously reported any such information.

RESPONSE:

29. All Documents Concerning any plan, proposal, or decision by Olin to "unwind" from participating in third-party industry trade indices, as stated by Scott Sutton during Olin's November 5, 2020 earnings call.

RESPONSE:

30. All Documents Concerning any plan, proposal, or decision by Olin to stop reporting information about chlorine pricing to IHS Markit or any other Person to whom Olin previously reported such information.

RESPONSE:

31. All Documents Concerning analyses, studies, surveys, or research Concerning the use of exclusive supply or sales agreements, by Olin or any other Person, in the North American chlorine market or in any segment or submarket of the North American chlorine market. For purposes of this request, an "exclusive" agreement is one that requires the buyer to purchase substantially all of its chlorine requirements from the seller or that prohibits the buyer from purchasing chorine from another seller without the contracting seller's permission.

RESPONSE:

32. All contracts or agreements, in effect at any time from January 1, 2020 to the present, between Olin as seller and any other Person as buyer, for the sale of chlorine in North America.

RESPONSE:

33. All Documents Concerning the Albemarle Contract.

RESPONSE:

34. All Documents Concerning Olin's strategy for its business relationship with Albemarle with respect to chlorine, including but not limited to Documents Concerning the terms and conditions of the Albemarle Contact, the potential revision, amendment, replacement, or termination of the Albemarle Contract, the amount of chlorine to be supplied to Albemarle at any given time or over the long term, or obtaining higher chlorine prices from Albemarle.

RESPONSE:

35. All Documents Concerning Olin's pricing of chlorine sold or offered for sale to Albemarle.

RESPONSE:

36. Documents sufficient to show the basis for Olin's calculation of the price for chlorine under the Albemarle Contract from January 1, 2015 to the most recent such calculation.

RESPONSE:

37. All Documents Concerning Communications with Albemarle about chlorine pricing.

RESPONSE:

38. All Documents Concerning Communications with Albemarle about chlorine supply or availability.

RESPONSE:

39. All Documents Concerning Communications with Albemarle about future chlorine supply or availability.

RESPONSE:

40. All Documents Concerning Olin's ability to supply Albemarle with all or substantially all of Albemarle's chlorine requirements.

RESPONSE:

41. All Documents Concerning any plan, proposal, or decision by Olin to decrease the amount of chlorine supplied to Albemarle below the amount called for in the Albemarle Contract.

RESPONSE:

42. All Documents Concerning any plan, proposal, or decision by Olin not to supply Albemarle with chlorine during any given time period or to cease supplying Albemarle with chlorine.

RESPONSE:

43. All Documents Concerning any request or proposal by Olin that Albemarle participate in a volume auction of chlorine.

RESPONSE:

44. All Documents Concerning analyses, studies, or research Concerning Albemarle's actual, projected, or potential ability to obtain chlorine from any source other than Olin.

RESPONSE:

45. All Documents Concerning any request, proposal, or effort by Olin to renegotiate the Albemarle Contract..

RESPONSE:

46. All Documents Concerning Olin's decision to terminate the Albemarle Contract.

RESPONSE:

47. All Documents Concerning any plans, proposals, efforts, or decisions by Olin to amend, modify, renegotiate, terminate, or replace existing chlorine supply contracts with any Person, including but not limited to plans, proposals, efforts, or decisions to "open up contracts" as stated by Scott Sutton during Olin's November 5, 2020 earnings call.

RESPONSE:

48. All Documents Concerning the subject matter of Scott Sutton's statement during Olin's January 27, 2023 earnings call that "Chlorine pricing is expected to step up through 2023 as legacy contracts end."

RESPONSE:

49. All Documents Concerning Olin's decision to file suit against Albemarle in the Circuit Court for the City of Richmond.

RESPONSE:

Dated: July 14, 2023

/s/ *William T. DeVinney*
William T. DeVinney (VSB 94032)
BRIGLIA HUNDLEY, PC
1921 Gallows Road
Suite 750
Tysons Corner, Virginia 22182
Tel: (703) 924-8076
Fax: (703) 883-0899
wdevinney@brigliahundley.com

Jeffry W. Duffy (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, Pennsylvania 19103
Tel: (215) 564-2916
Fax: (215) 568-3439
jduffy@bakerlaw.com

*Attorneys for Plaintiff Albemarle Corporation*

## CERTIFICATE OF SERVICE

I certify that on this date I served the foregoing First Set of Requests for Production of Documents on counsel of record for defendant Olin Corporation by e-mail as follows:

>Corey W. Roush, Esq.
>Robert G. Lian, Jr., Esq.
>J. Matthew Schmitten, Esq.
>Akin Gump Strauss Hauer & Feld LLP
>Robert S. Strauss Tower
>2001 K. Street, N.W.
>Washington, DC 20006-1037
>croush@akingump.com
>mschmitten@akingump.com
>blian@akingump.com

Dated: July 14, 2023                                /s/ *Jeffry W. Duffy*
                                                                Jeffry W. Duffy