**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

ALBEMARLE CORPORATION,

    Plaintiff,

  v.

OLIN CORPORATION,

    Defendant.

Civil No. 1:23-cv-600

**MEMORANDUM OF LAW IN OPPOSITION TO ALBEMARLE'S MOTION TO SUBMIT OLIN CORPORATION'S ADMISSIONS IN SUPPORT OF MOTION TO DISMISS OLIN CORPORATION'S COUNTERCLAIMS**

**INTRODUCTION**

Albemarle Corporation ("Albemarle") makes an unprecedented request in its motion as it seeks to introduce evidence about a document that is not in evidence that Albemarle believes supports its *motion to dismiss*. Specifically, Albemarle moves to submit Olin's responses (the "Responses") to Albemarle's First Set of Requests for Admission (the "Requests"). But Olin's Responses to the Requests—all four of which concern "the TBBPA Contract attached to Albemarle's motion to dismiss and . . . several other material facts relating to that contract" (Doc. 61 at 1)—remain inapplicable and irrelevant to Olin's counterclaims. This is problematic for many reasons. First, Albemarle is hoping to insert evidence that it has gathered into a motion to dismiss proceeding where all of the allegations are to be accepted as true. Second, the evidence Albemarle seeks to introduce does not relate to Olin's counterclaims—it relates to a contract that is irrelevant to Olin's counterclaims. Indeed, Albemarle does not assert that Olin is a party to the expired contract whose forum selection clause forms the basis of Albemarle's *forum non conveniens* argument.

As already explained in depth in Olin's opposition to the motion to dismiss the counterclaims (the "Opposition," Doc. 50), Olin's allegations do not merely address Olin's own transactions with Albemarle; rather, Olin's counterclaims—brought under the Sherman Act, the Clayton Act, and the Virginia Antitrust Act—encompass Albemarle's larger conduct in the REACH-compliant TBBPA market, which, needless to say, goes beyond Olin and Albemarle's interactions with one another (or their respective, affiliated entities). Because Albemarle's reasons for seeking to submit Olin's Responses are improper and legally unsound, Olin requests that the Court decline Albemarle's present motion.

## ARGUMENT

**A.     Albemarle's Attempt to Develop an Evidentiary Record is Improper.**

To spare the Court from having to review the same arguments, Olin respectfully directs the Court to Olin's Opposition to Albemarle's motion to dismiss. In the Opposition, Olin explains why Albemarle's motion to dismiss is based on an improper attempt by Albemarle to introduce evidence outside of the four corners of Olin's counterclaims. (*See* Doc. 50 at 2-5.) Olin's argument there can be equally applied to Albemarle's current attempt to supplement the record with the Responses: Just as the Court should not consider the contract that Albemarle inappropriately attached as an exhibit to its motion to dismiss—which is neither integral to nor relied on in Olin's counterclaims—the Court should not consider the Responses concerning that same contract. Consideration of the Responses at the motion to dismiss is improper and has nothing to do with the counterclaims. *See, e.g.*, *Reynolds v. Robert & Diane Ellison Fam. Tr.*, No. CIV.A. 3:05CV854-JRS, 2006 WL 1213998, at *2 (E.D. Va. May 2, 2006) ("In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true the factual allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. . . . In shaping its ruling on a motion to dismiss for failure to state a claim, a court can rely upon only the allegations set forth in the complaint, including documents attached as exhibits or incorporated by reference.") (internal quotation marks omitted) (citing *Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005)); *Jackson v. Geren*, No. CIV.A. AW-07-851, 2008 WL 7728652, at *2 (D. Md. Mar. 26, 2008) ("A court only considers the pleadings when deciding a Rule 12(b)(6) motion.").

Albemarle professes that "the Court is free to consider the TBBPA Contract because Olin's counterclaims rely on that contract." (Doc. 62 at 3.) **This is simply not true.** And Albemarle's continued repetition of this self-serving and wrong statement is stunning. Olin asserted the

counterclaims in good faith. It (and not Albemarle) knows what they are based on. This Court at the motion to dismiss stage is supposed to accept those allegations as true. Albemarle does not get to set up and knock down a strawman. And yet, here we are. ***Both the Responses and the contract-exhibit are wholly irrelevant to Olin's allegations*** that: (i) Albemarle entered into an unlawful acquisition with its only U.S. TBBPA competitor, (ii) Albemarle attempted to leverage its TBBPA monopoly to extract anticompetitive terms for Olin's chlorine, and (iii) Albemarle entered into a conspiracy with the only other major global TBBPA producer to avoid making competitive bids with incumbent customers. In any event, the Responses should not play a role in determining a motion to dismiss that is supposed to only present questions of law, ***not questions of fact***. *See Lowdermilk v. LaManna*, Civil Action No. 8:07-2944-GRA-BHH, 2009 U.S. Dist. LEXIS 74612 (D.S.C. July 27, 2009) (holding that "a motion to dismiss under Rule 12(b)(6) presents only a question of law. Either the plaintiff's allegations state a claim, or they do not. No discovery is needed to support or oppose the defendants' motion to dismiss."); *Boudreaux Grp., Inc. v. Nexsen*, Civil Action No. 8:18-cv-1498-TMC, 2018 U.S. Dist. LEXIS 228859 at *14 n.5 (D.S.C. Nov. 20, 2018) ("[N]o discovery is needed to defend against a Motion to Dismiss, as such a motion is based solely on the face of the pleadings and whether or not the Plaintiff has stated a claim upon which relief can be granted.").

Albemarle further argues "in the alternative," (Doc. 60 at 2), that the Court may consider evidence outside the pleadings under the doctrine of *forum non conveniens* "based on the TBBPA Agreement's forum selection clause," *id.* at 3. The entirety of Albemarle's *forum non convenience* argument, which is the vehicle through which it is attempting to shuttle in an evidentiary record in a 12(b)(6) motion, is about a forum selection clause in an expired contract. Yet, as Olin detailed in the Opposition, (*see* Doc. 50 at 21-22), even this forum selection argument is inapplicable

3

because Olin's counterclaims do not implicate the contract in the first instance. Even more, Albemarle has argued (correctly) that Olin is not a party to the contract bearing the forum selection clause—which contract expired at the end of 2022.[1]

In sum, because the Responses are a red herring that primarily serve to cause confusion regarding the actual substance of Olin's counterclaims, Olin's Responses should not be considered by the Court in ruling on Albemarle's motion to dismiss.

B.  **Olin Does Not Need to Directly Purchase from Albemarle to be a Direct Purchaser.**

In addition to its procedural improprieties, Albemarle is also substantively incorrect in its legal arguments regarding whether the Responses show that Olin has pled injury in fact or antitrust injury and/or possesses standing to bring its counterclaims as an "indirect purchaser" of TBBPA.

To start, as noted in the Opposition, it is settled black-letter law that the federal ***"direct purchaser rule" does not apply to federal antitrust claims seeking injunctive relief,*** which Olin is requesting as part of its counterclaims—specifically, for the unwinding of Albemarle's unlawful combinations and prohibiting further collusion. *See* Doc. 50 at 10-11; *see also* Doc. 38 at 51. Next, as Olin has also already explained, Olin's well-pleaded allegations (which must be accepted as true at this juncture) show that Olin has alleged antitrust injury to itself and is a direct purchaser of TBBPA from both Albemarle and others. (*See* Doc. 50 at 10.)

---

[1] Albemarle fails to cite a single authority or provide an expert opinion on German law in support of its assertion that the forum-selection clause in an expired contract would remain in place even as the remainder of the contract is fallow. (*See* Dkt. 54 at 8-9.) It relies only on U.S. cases, while the contract it improperly seeks to put before the Court states that it is to be interpreted in accord with German law, not U.S. law. (*See* Dkt. 46-1 at ¶ 11.1) ("This Agreement shall be governed by the substantive laws of Germany, with the exclusion of the Conflict of Law Principles. The United Nations Convention on Contracts for the International Sale of Goods (1980) shall not apply to this Contract."). As the proponent of this argument and this exhibit, Albemarle had the burden—unmet—to prove that this expired contract term is applicable to *anyone*, much less to Olin Corporation specifically, under German law.

Even if Olin were deemed to be an indirect purchaser, it would still have antitrust standing because (1) Olin has alleged that it was harmed when it attempted to obtain supply directly from another Bromine Producer—which has nothing to do with how (directly or indirectly) Olin obtained Albemarle's supply, and (2) Olin has alleged harms to its chlorine sales, chlorine customers and Olin's relationships with those customers, which are similarly detached from the question of whether Olin is a direct or indirect purchaser of TBBPA. (*See id.*)  Therefore, the Responses remain impotent in supporting any of Albemarle's standing-related arguments in its motion to dismiss and should not be taken into consideration.

**C.    Based on Albemarle's Own Allegations, Olin's Damages and the Harms Related to its Chlorine Sales Unambiguously Belong to the Corporate Parent.**

As explained in the Opposition, Olin is suing Albemarle based on Olin's *own* injuries—i.e., injuries arising from the conduct challenged that occurred in the United States (unlawful effective acquisition of the only other U.S. producer of TBBPA and unlawfully tying TBBPA with chlorine sold and produced in the United States) and global conduct having a direct, substantial and foreseeable effect on the United States (artificially raising the price of TBBPA and the products that incorporate it in a global market, causing prices to rise for American and Virginian end users)—which conduct had the effect, among other things, of artificially depressing the price at which Olin was able to sell chlorine when Albemarle leveraged its TBBPA monopoly into monopsony power for chlorine. (*See* Doc. 50 at 1.)  Neither the expired contract to which Olin is not a party nor the corporate relationship between different Olin entities has anything to say about Olin's harms related to chlorine, which Albemarle's own Complaint shows unambiguously belong to Olin. (*See* Doc. 50 at 1 (citing Complaint, Doc. 1 at ¶¶ 10-11, 27, 43-45, which allege that Olin—not another entity—sold Albemarle chlorine during the period relevant to Olin's

5

counterclaims, from its facilities in the United States to Albemarle's facilities in the United States).)

## II. CONCLUSION

For the foregoing reasons, this Court should deny Albemarle's motion and exclude the Responses from any consideration in connection with Albemarle's pending motion to dismiss the counterclaims.

Dated: November 13, 2023

Respectfully submitted,

*/s/ Robert G. Lian Jr*
Corey W. Roush (*pro hac vice*)
Robert G. Lian Jr. (36406)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4115
croush@akingump.com
blian@akingump.com

*Counsel for Olin Corporation*